[Civ. No. 68365. Second Dist., Div. Three. Jan. 11, 1984.]

CORINNE D. SWANER et al., Plaintiffs and Appellants, v.
CITY OF SANTA MONICA et al., Defendants and Respondents.

**COUNSEL**

Manuel H. Miller and Jeffrey S. Weiss for Plaintiffs and Appellants.

Robert M. Myers, City Attorney, Stephen S. Stark, Assistant City Attorney, Debra S. Kanoff and Karl M. Manheim, Deputy City Attorneys, for Defendants and Respondents.

## OPINION

**LUI, Acting P. J.—**

### SUMMARY

Appellants Corinne Swaner and Raymond Spina filed a complaint against the City of Santa Monica (City), the County of Los Angeles (County), the State of California (State) and Frank Veltri (Veltri). The complaint sought damages for injuries allegedly suffered by Swaner and Spina when they were struck by a vehicle driven by Veltri which the complaint alleges was negligently and illegally operated on the Santa Monica State Beach Park (sometimes referred to as the beach).

Veltri and the County answered the complaint. The City and State filed demurrers to the complaint. The trial court sustained the demurrers to the complaint as well as subsequent demurrers filed by the City and State to appellants' first and second amended complaints. Following the sustaining of the demurrer to the second amended complaint without leave to amend, the trial court dismissed the complaint against the City and State with prejudice.

Appellants filed a timely notice of appeal from the trial court's order of dismissal. Only the City and State are respondents in this appeal. For the reasons expressed below, we hold that the appellants' complaints stated causes of actions against the respondents City and State sufficient to overcome the demurrers. Accordingly, we reverse the order sustaining the demurrers.

### STATEMENT OF FACTS[1]

At about 2 a.m. on February 22, 1981, appellants were on the beach near a parking lot located at 810 Pacific Coast Highway. The beach and the adjacent parking lot are owned, operated, maintained and supervised by the respondents and the County. Appellants were injured when they were struck by a vehicle driven by Veltri.

The complaint alleges that the parking lot, unlike a number of other parking lots along the beach, has no fence or other barrier between it and the highway or the beach. There was a sign posted in the parking lot which listed and described several pertinent City ordinances. One of the ordinances listed was the City's Municipal Code (Code) section 4202a. Placed

---

[1] We have obtained the facts from the appellants' second amended complaint.

beside this reference to the City's Code was the phrase, "No Sleeping Midnight to 5:00 A.M." Omitted from the sign was the City's Code section 3355, which prohibits the operation of motor vehicles on the beach.

Appellants allege that they were lawfully and properly on the beach when injured. However, in claim forms submitted to the respondents and County, appellants indicate that they were "laying" or "sleeping" on the beach at the time of their injuries.

Appellants allege that Veltri gained access to the beach through the parking lot in question. They further allege that respondents knew that other vehicles had been gaining access to this portion of the beach through this parking lot, that such vehicles were racing on the beach, and that people had been injured on the beach as a result. Appellants allege that the lack of a fence or barrier at the beach and parking lot rendered the property in a dangerous condition because it allowed for the use of the beach by third parties who improperly raced motor vehicles.

## APPELLANTS' CONTENTIONS ON APPEAL

Appellants contend that the trial court erred in sustaining the demurrer to their second amended complaint because:

1. The facts pled in the first and third causes of action in the second amended complaint state facts sufficient to constitute a cause of action in that (a) the respondents' failure to erect gates, fences, chains or other types of barriers rendered the property in a dangerous condition within the meaning of Government Code section 835 and (b) the inaccurate sign placed on the beach by respondents rendered the parking lot beach area in question in a dangerous condition within the meaning of Government Code section 835.

2. The failure of the respondents and the County to erect a fence or barrier along the parking lot and beach in question was unreasonable within the meaning of Government Code section 835.4.[2]

---

[2]Government Code section 835.4 provides: "(a) A public entity is not liable under subdivision (a) of Section 835 for injury caused by a condition of its property if the public entity establishes that the act or omission that created the condition was reasonable. The reasonableness of the act or omission that created the condition shall be determined by weighing the probability and gravity of potential injury to persons and property foreseeably exposed to the risk of injury against the practicability and cost of taking alternative action that would not create the risk of injury or of protecting against the risk of injury. [¶] (b) A public entity is not liable under subdivision (b) of Section 835 for injury caused by a dangerous condition of its property if the public entity establishes that the action it took to protect against the risk of injury created by the condition or its failure to take such action was reasonable. The reasonableness of the action or inaction of the public entity shall be determined by taking into consideration the time and opportunity it had to take action and by weighing the probability and gravity of potential injury to persons and property foreseeably exposed to the risk of injury against the practicability and cost of protecting against the risk of such injury."

## DISCUSSION

### I

### *Our Scope of Review*

■ On appeal from a demurrer to a complaint which was sustained without leave to amend, the general rule is that a general demurrer admits the truth of all material factual allegations in the complaint. Though a plaintiff may be unable to prove his allegations, he need only plead facts showing that he may be entitled to some relief. (See generally, *Alcorn* v. *Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 496 [86 Cal.Rptr. 88, 468 P.2d 216].)

■ " ' "[T]he allegations . . . [are to] be liberally construed with a view to attaining substantial justice among the parties." ' (*King* v. *Central Bank* (1977) 18 Cal.3d 840, 843 [135 Cal.Rptr. 771, 558 P.2d 857].) 'Although facts should be averred in "ordinary and concise language" (Code Civ. Proc., § 426), precise form and language are not essential. "[T]he rule is, that if upon a consideration of all the facts stated it appears that the plaintiff is entitled to any relief at the hands of the court against the defendants, the complaint will be held good, although the facts may not be clearly stated, or may be intermingled with a statement of other facts irrelevant to the cause of action shown, or although the plaintiff may demand relief to which he is not entitled under the facts alleged." [Citation.]' [Citation.]" (*Gonzales* v. *City of San Diego* (1982) 130 Cal.App.3d 882, 884 [182 Cal.Rptr. 73], quoting from *Scott* v. *City of Indian Wells* (1972) 6 Cal.3d 541, 549 [99 Cal.Rptr. 745, 492 P.2d 1137].)

### II

*A Condition of Real Property Which Creates a Substantial Risk of Injury to Foreseeable Users Who Are Exercising Due Care Constitutes a Dangerous Condition Within the Meaning of Government Code Section 835, Even if the Risk Is the Result of the Foreseeable Use of Such Property Without Due Care by Third Persons*

■ Government tort liability in California is governed completely by statute. "[A]ll common law or judicially declared forms of liability for public entities, except for such liability as may be required by the state or federal constitution, . . ." was abolished by Government Code section 815.[3] (See legis. committee's com. to § 815, 32 West's Ann. Gov. Code (1980

---

[3]Hereinafter all references shall be to the Government Code unless otherwise indicated.

ed.) p. 168; Deering's Ann. Gov. Code, § 815 (1982 ed.) p. 134.) "In the absence of a constitutional requirement, public entities may be held liable only if a statute . . . is found declaring them to be liable." (*Ibid.*)

A public entity's liability for a dangerous condition of its property is governed by section 835, which provides: "Except as provided by statute, a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either: [¶] (a) A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or [¶] (b) The public entity had actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition."

Section 830, subdivision (a), defines a "dangerous condition" as follows: "[A] condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used."

A. *The Use of Public Property by Third Persons Without Due Care Does Not Negate the Existence of a Dangerous Condition Within the Meaning of Section 835*

■ To successfully allege a "dangerous condition" within the meaning of section 830, a plaintiff must allege that the condition of the public property created a substantial risk when "used with due care" in a foreseeable manner. In the case on appeal, it is extremely difficult to conceive of a situation wherein an unauthorized driver of a vehicle on the Santa Monica beach can be said to be exercising due care particularly in light of the City's Code section 3355.

■ In essence, appellants assert that the beach was in a dangerous condition because the absence of a barrier or fence allowed for the foreseeable use of the beach by third persons who would not exercise due care. We must determine whether such a contention is in conflict with the definition of a dangerous condition in section 830, which requires a substantial risk when public property is used with due care. We conclude in our discussion below that there is no conflict.

■ It has long been held that the negligence or lack of due care exhibited by a plaintiff-user of public property does not necessarily defeat his cause

of action. The Law Revision Commission's comment to section 830 provides: "Although the condition will not be considered dangerous within the meaning of this chapter unless it creates a hazard to those who foreseeably will use the property or adjacent property with due care, this does not require that the injured person prove that he was free from contributory negligence. Contributory negligence is a matter of defense under subdivision (b) of Section 815. The plaintiff is, however, required to establish that the condition was one that *created a hazard to a person who foreseeably would use the property or adjacent property with due care.*" (Italics added.) (Law Revision Com. com. to § 830, 32 West's Ann. Gov. Code (1980 ed.) p. 266; Deering's Ann. Gov. Code, § 830 (1982 ed.) p. 222.)

The negligence of a plaintiff-user of public property, therefore, is a defense which may be asserted by a public entity; it has no bearing upon the determination of a "dangerous condition" in the first instance. (See also *Callahan* v. *City and County of San Francisco* (1967) 249 Cal.App.2d 696, 702-703 [57 Cal.Rptr. 639]; Van Alstyne, Cal. Government Tort Liability Practice (Cont.Ed.Bar 1980), § 3.12, pp. 198-201.) So long as *a* plaintiff-user can establish that a condition of the property creates a substantial risk to *any* foreseeable user of the public property who uses it with due care, he has successfully alleged the existence of a dangerous condition regardless of his personal lack of due care. If, however, it can be shown that the property is safe when used with due care and that a risk of harm is created only when foreseeable users fail to exercise due care, then such property is not "dangerous" within the meaning of section 830, subdivision (a). (See, e.g., *Fuller* v. *State of California* (1975) 51 Cal.App.3d 926, 939-940 [125 Cal.Rptr. 586].)[4]

While the effect of a plaintiff-user's own negligence in cases of government tort liability is relatively settled, the effect of a third party's concurrent negligent use of public property on the determination of the existence of a "dangerous condition" is less clear. In *Murrell* v. *State of California ex rel. Dept. Pub. Wks.* (1975) 47 Cal.App.3d 264 [120 Cal.Rptr. 812], the Third District Court of Appeal expressed what it believed to be the conflict

---

[4]At the time sections 830 and 835 were enacted (§ 830 added by Stats. 1963, ch. 1681, § 1, p. 3272; § 835 added by Stats. 1963, ch. 1681, § 1, p. 3275), the doctrine of contributory negligence as a complete bar to a plaintiff's cause of action was still in effect. Consequently, even though proof of a plaintiff's negligence did not negate the existence of a dangerous condition, it still had the effect of absolving a public entity from liability for failing to take steps to protect a plaintiff whose own negligence contributed to his injuries.

With the pronouncement of the doctrine of comparative negligence in *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393], and its application to government tort liability (see, e.g., *Levine* v. *City of Los Angeles* (1977) 68 Cal.App.3d 481 [137 Cal.Rptr. 512]), such proof today would not necessarily exonerate a public entity from all liability. Instead, it might serve only to reduce the public entity's liability exposure in proportion to the negligence of the plaintiff and others.

between otherwise accepted tort doctrine in the area of third party negligence and the definition of a "dangerous condition" in section 830.

In *Murrell,* plaintiff had been a passenger on a bus. He sued the State of California and the Department of Public Works for injuries sustained when the driver of the bus lost control while proceeding around a corner. The plaintiff alleged that the corner constituted a "dangerous condition." The trial produced evidence from which the jury could have inferred negligence on the part of the bus driver. The trial culminated in a verdict in favor of the State. Regarding the propriety of BAJI No. 3.79 (when third party's intervening negligence is not a superseding cause), the appellate court discussed the foreseeable negligence of third parties and the effect of Government Code section 830 in light of the Restatement Second of Torts, section 449.

"The quoted excerpt of BAJI No. 3.79 expresses the rule of Restatement Second of Torts, section 449: 'If the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious, or criminal does not prevent the actor from being liable for harm caused thereby.' . . . [¶] Viewed as the description of a duty of care, Restatement section 449 evokes some pondering in the context of governmental tort suits. The liability of California public entities for the 'dangerous condition' of public facilities is delimited by the carefully articulated provisions of Government Code section 830 et seq., which do not always conform to common law tort doctrine. *The 'dangerous condition' definition in Government Code section 830, subdivision (a), and the broader duty expressed in Restatement section 449 may be incompatible.* Applied to highways and streets, the former imposes a duty to provide physical conditions which do not create a substantial risk of injury when used with due care in a foreseeable manner. . . . Similarly applied, the Restatement rule would demand highway and street safeguards against all foreseeable negligence of motorists. It is difficult to reconcile the statutory rule of care, which permits a presupposition of careful use, with the decisional rule which requires the actor to guard against foreseeable negligence. [Citations.]" (Italics added.) (*Murrell, supra,* 47 Cal.App.3d at pp. 271-272, fn. 7.)

Possibly to resolve the conflict between Restatement section 449 and section 830 described in *Murrell,* several appellate decisions have applied the same test employed when a plaintiff-user is himself negligent to situations which involve third party user negligence. That is, to successfully allege a "dangerous condition," a plaintiff has been required only to show that there existed a substantial risk of injury to that plaintiff assuming that foreseeable third party users had exercised due care. The negligence of the particular

third party involved is left to the public entity to raise as a matter of defense. (See, e.g., *Moritz* v. *City of Santa Clara* (1970) 8 Cal.App.3d 573 [87 Cal.Rptr. 675]; *Murrell, supra,* 47 Cal.App.3d 264; *Morris* v. *State of California* (1979) 89 Cal.App.3d 962 [153 Cal.Rptr. 117]; and *Baldwin* v. *Zoradi* (1981) 123 Cal.App.3d 275 [176 Cal.Rptr. 809].)

A necessary corollary to this rule is that if the injury to a plaintiff could have occurred only by some third party's negligence, then it must be held that the plaintiff has failed to sufficiently allege a dangerous condition because the injury was made possible only by the failure of the third party user to exercise due care. (See *Morris* v. *State of California, supra,* 89 Cal.App.3d at pp. 965-966, and Van Alstyne, Cal. Government Tort Liability Practice (Cont.Ed.Bar 1980) § 3.12, pp. 198-201.)

This has not been the universal interpretation of the effect of third party negligence. In *Mathews* v. *State of California* ex rel. *Dept. of Transportation* (1978) 82 Cal.App.3d 116 [145 Cal.Rptr. 443], the plaintiff was injured while driving through an intersection. Although the intersection was controlled by a traffic light, the light was stuck in a condition such that the east-west traffic had a constant green light while the north-south traffic had a constant red light. Plaintiff, who was traveling in an east-west direction, was struck by a vehicle moving in a north-south direction. The only manner in which the plaintiff could have been injured was through the third party's failure to heed the red signal. The *Mathews* court held that the jury could have found the intersection to be in a dangerous condition, stating, "if the condition of the property was such that it created a substantial risk of injury to a person using the property with due care, an injured plaintiff is not required to prove that the driver of the third party vehicle . . . was exercising due care at the time of the injury. That is, the third party's negligent use does not negate the existence of a dangerous condition. What plaintiff is required to show, however, is that the condition of the property was dangerous as to him *and as to the public generally.* What we must determine therefore is whether in the abstract the factual situation in the case at bench could be found by the finder of fact to have created a dangerous condition without regard to the specific conduct of [the driver of the other vehicle] or the plaintiff on this particular occasion." (Italics added.) (*Mathews, supra,* 82 Cal.App.3d at p. 121.)

Because any motorist approaching the intersection with due care and with a green light could foreseeably have been injured (even if the risk of injury was created by a combination of the malfunctioning lights and the conduct of another careless motorist), the *Mathews* court stated that it could not find as a matter of law that the condition at the intersection was not dangerous. (*Id.,* at pp. 121-122.) Accordingly, the Court of Appeal reversed a judg-

ment of dismissal in favor of the State entered after the grant of a motion for judgment on the pleadings.

A similar rationale was used by division five of this district in *Slapin v. Los Angeles International Airport* (1976) 65 Cal.App.3d 484 [135 Cal.Rptr. 296]. In *Slapin,* the plaintiff was assaulted and injured while on a parking lot at the Los Angeles International Airport. Plaintiff alleged that the parking lot was in a "dangerous condition" within the meaning of section 830 because of the combination of inadequate lighting and the foreseeable risk of criminal conduct by third parties. *Slapin* held that the plaintiff's complaint properly stated a cause of action and that the sustaining of defendant's demurrer by the trial court was improper, stating: "If defendant so poorly lighted the parking lot as to create a substantial risk of muggings, plaintiffs may be able to establish the elements of a cause of action under section 835. We hold that plaintiffs are entitled to attempt to prove (1) that the lighting of the parking lot created a substantial risk of a criminal assault and thus constituted a dangerous condition; (2) that plaintiffs' injuries were proximately caused by the dangerous condition; (3) that the dangerous condition created a reasonably foreseeable risk of the kind of injury plaintiffs sustained; and (4) that defendant had actual or constructive notice of the dangerous condition in time to have taken measures to protect against it." (*Id.* at pp. 488-489.)

*Slapin* distinguished a previous decision by the First District in *Sykes v. County of Marin* (1974) 43 Cal.App.3d 158 [117 Cal.Rptr. 466]. *Sykes* involved an affirmance of a judgment of nonsuit granted after the presentation of evidence. The plaintiff in *Sykes* had alleged that his injuries were caused by a combination of inadequate lighting and criminal conduct by third parties. *Slapin* noted that "[i]n *Sykes,* the plaintiff presented his proof and failed to establish a case. In the instant matter, plaintiffs have not been given the opportunity to put on their proof. No mention is made in the *Sykes* opinion of any previous criminal activity at the school parking lot. Thus the plaintiff there may have been unable to prove that the kind of injury suffered was foreseeable. [Citation.] Here, on the other hand, plaintiffs may be able to establish a history of crime at the parking lot which rendered the injury foreseeable. [¶] The *Sykes* opinion emphasizes that the injury to the plaintiff there was 'caused not by the condition of the parking lot but by the criminal acts of third parties.' (*Id.,* at p. 164.) The court considered the intentional criminal acts of the assailants to be a superseding intervening cause. (*Id.,* at p. 163.) It must be assumed that the plaintiff's evidence in *Sykes* failed to establish any causal connection between the lack of lighting at the parking lot and the injuries received. We construe *Sykes* in this manner so as to render it consistent with two well-established principles: (1) a governmental

entity may be liable for injuries caused by a *combination of* a dangerous condition of public property and the wrongful acts of third parties [citations]; and (2) *a defendant may not successfully defend that the plaintiff's injuries were caused by the wrongful criminal act of a third party, where the very basis upon which the defendant is claimed to be negligent is that the defendant created a reasonably foreseeable risk of such third party conduct.* [Citations.]" (Latter italics added.) (*Slapin, supra,* 65 Cal.App.3d at pp. 489-490.)

*Slapin* determined that third party conduct was relevant to the issue of causation. Plaintiffs were not forbidden from using third party conduct as *the* factor which made public property "dangerous" within the meaning of section 830.

One of the first appellate decisions to interpret the language of section 830 reached a similar result. In *Callahan* v. *City and County of San Francisco* (1967) 249 Cal.App.2d 696 [57 Cal.Rptr. 639], the plaintiff was a passenger in a vehicle involved in an accident. Based on allegations contained in the original complaint, defendant contended that the driver of the vehicle was negligent. The plaintiff alleged in a subsequent complaint that his injuries were the result of the defendant city's failure to adequately maintain the intersection where the accident occurred. In discussing the effect of the driver's negligence on the plaintiff's cause of action, *Callahan* stated: "The question, therefore, is, assuming that Day [the driver] was negligent because of his actions as charged by plaintiff in her original complaint, and assuming, as we must, that the allegations against the city are true: Does this exonerate the city as a matter of law from liability? Of course, the negligence of the third party may become a superseding cause, thereby striking out as a causative factor the public entity's negligence. But it is established that although a third person may have been concurrently negligent with a public entity, the latter is not necessarily relieved from liability. [Citations.] *Foreseeability is the primary element.* [Citations.] *The question of proximate cause essentially is one of fact.* [Citations.]" (Italics added.) (*Callahan, supra,* 249 Cal.App.2d at p. 701.)

*Callahan* noted that *if the driver of the vehicle had brought the action, he would only be required to show that the condition of the property created a danger to persons generally; his personal negligence was a matter of defense which could be asserted by the State. Callahan* concluded that if the driver could proceed leaving the plea of contributory negligence to the defense, a guest (passenger) should be able to state a cause of action unimpeded by the negligence of a third party user, "the effect of which (if proved)

on *causation* is a question of fact." (Italics added.) (*Callahan, supra,* at p. 703.)[5]

■ We agree with the holdings in *Mathews, Slapin,* and *Callahan.* A third party user's negligence may break the chain of causation between the maintenance of a dangerous condition by a public entity and the injuries suffered by a plaintiff. This would be the case if a third party user's negligence was unforeseeable. (See *Callahan, supra,* 249 Cal.App.2d at p. 701; *Vesely* v. *Sager* (1971) 5 Cal.3d 153, 163 [95 Cal.Rptr. 623, 486 P.2d 151]; *Schrimscher* v. *Bryson* (1976) 58 Cal.App.3d 660 [130 Cal.Rptr. 125]; but see *Baldwin* v. *State of California* (1972) 6 Cal.3d 424, 428, fn. 3 [99 Cal.Rptr. 145, 491 P.2d 1121].)

The third party's negligence, however, does not negate the existence of a "dangerous condition." In fact, if the third party's negligence or criminal conduct is foreseeable, such third party conduct may be the very risk which makes the public property dangerous when considered in conjunction with some particular feature of the public property, viz., the lack of a fence or barrier as alleged herein.[6]

Although our Supreme Court originally felt that it had before it the question "whether a public entity may be held liable for maintaining or creating a condition dangerous to persons exercising due care if the danger rises from the foreseeably negligent conduct of third persons" in *Ducey* v. *Argo*

---

[5]We note that the court in *Callahan* did state that, "[t]here is logic, as well as the quoted commentaries, in favor of appellant's position that section 830, subdivision (a), *defines* dangerous condition with relation to the general public and not to a particular driver or user or person coming into contact with public property." (Italics added.) (*Id.,* at p. 703.)

This is not inconsistent with our holding that a third party's negligence does not relate to the phrase "used with due care" contained in section 830. *Callahan* merely states that to be a dangerous condition, the risk created must be to the general public, irrespective of a user's personal negligence. A "dangerous condition" is defined in terms of the harm to *a* foreseeable user. As pointed out in the text, however, the *effect* of a *third party's* negligence is upon *causation,* not upon the definition of a dangerous condition. Because of the unique factual situation in *Callahan* in which the plaintiff was not an active user of the property but a passenger in a vehicle, the inquiry in *Callahan* proceeded as follows: (1) Was the condition dangerous to *a* foreseeable user, i.e., to a driver, ignoring the driver's negligence? and (2) If it was, did a third party's negligence, in this case the driver's negligence, break the chain of causation between the maintenance of the dangerous condition and the plaintiff's injuries.

[6]After the reversal of the judgment sustaining the defendant's demurrer in *Callahan* v. *City and County of San Francisco, supra,* 249 Cal.App.2d 696, the city filed an answer to plaintiff's complaint and moved for summary judgment. The summary judgment was granted and that judgment was affirmed in *Callahan* v. *City and County of San Francisco* (1971) 15 Cal.App.3d 374 [93 Cal.Rptr. 122]. In reaching its decision on the summary judgment, the Court of Appeal relied on the fact that: (1) no other similar accident had occurred at this intersection; (2) the intersection was dangerous only when a user (i.e., the driver) failed to exercise due care (in *Callahan,* the intersection was safe unless driven in a "maniacal" fashion); and (3) the city could not be liable because of the design immunity provided by section 830.6.

*Sales Co.* (1979) 25 Cal.3d 707 [159 Cal.Rptr. 835, 602 P.2d 755] (see Supreme Court press release 42/78, 78-158 and *Morris* v. *State of California* (1979) 89 Cal.App.3d 962, 966, fn. 5 [153 Cal.Rptr. 117]), its opinion in *Ducey* did not resolve this question.

In *Ducey,* the plaintiffs were injured when a car driven by a third party crossed a freeway median and collided head-on with the plaintiffs' automobile. Plaintiffs claimed that the absence of a physical median barrier rendered the highway in a "dangerous condition" within the meaning of section 830. Evidence produced at trial indicated that cross-median accidents usually occurred as a result of the negligence of one of the drivers, although such accidents could occur without fault on the part of either driver. A jury verdict was returned in favor of the plaintiffs against the State. On appeal, the State argued that because cross-median accidents usually result from the negligence of one of the parties, the highway was not in a dangerous condition when used with due care. *Ducey* held that because evidence was presented which indicated that the accident could have occurred without the negligence of either driver, the jury could have found that the barrierless, heavily traversed highway constituted a dangerous condition within the meaning of section 830. Thus, the court did not resolve the question whether an accident caused solely by third party negligence would absolve the State from liability.

The court summarized in a footnote another possible interpretation of section 830 which was suggested by the California Trial Lawyers Association's (CTLA) amicus brief. The court noted that the amicus brief quoted from the language contained in the Law Revision Commission's comment to section 830, which provides, "[a] condition is not dangerous within the meaning of this chapter unless it creates a hazard *to those who foreseeably will use the property or adjacent property with due care.* Thus, even though it is foreseeable that persons may use public property without due care, a public entity may not be held liable for failing to take precautions *to protect such persons.* " (Italics added.) (Law Revision Com. com. to § 830.) It then stated that based on this language, "the [CTLA] argues that properly interpreted, the provisions of section 830, subdivision (a), should not bar recovery by persons, such as the plaintiffs in the instant case, who personally exercise due care on public property, even when the risks created by the condition of state property arise only as a result of the negligent conduct of third parties." (*Ducey, supra,* 25 Cal.3d at p. 719, fn. 5.)

We reject the CTLA's construction inasmuch as it requires a plaintiff personally to prove that he (as contrasted to the public generally or to any foreseeable user) was free from fault before recovering from a public entity. Such an interpretation of section 830 would contravene other portions of

the Law Revision Commission's comment which provide that a plaintiff's negligence is a matter of defense assertable by the State. Additionally, contributory negligence would not bar an action today because of the doctrine of comparative negligence. (See *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393].) We agree with the CTLA, however, that a condition of property may be dangerous "even when the risks created by the condition of state property arise only as a result of the negligent conduct of third parties." (*Ducey, supra,* 25 Cal.3d at p. 719, fn. 5.)

██ Appellants have alleged that the respondents knew that racing was occurring on the beach, that the offending vehicles were entering the beach from the parking lot in question, and that people on the beach were being injured. We hold that these allegations, if proved, may provide a sufficient level of foreseeability so as to render the condition of the beach a proximate cause of appellants' injuries. We also find that racing on the beach may create a substantial risk of injury to foreseeable users of the beach even if those users exercise due care. It may well be that respondents will successfully show on a motion for summary judgment that appellants have no evidence to support these allegations in their complaint in this regard. If so, respondents, as appellants conceded at oral argument, could successfully move for summary judgment pursuant to Code of Civil Procedure section 437c.

B. *Appellants Have Alleged a Sufficient Nexus Between the Third Party's Conduct and the Condition of the Property Such as to Satisfy the Definition of a Dangerous Condition in Section 835*

██ The acts of third parties alone cannot constitute a dangerous condition of public property. (*Hayes* v. *State of California* (1974) 11 Cal.3d 469 [113 Cal.Rptr. 599, 521 P.2d 855].) Such third party conduct must be combined with a condition of the property before liability can be imposed upon a public entity. (*Ibid.*) ██ Appellants allege that the activities of the third party concurrent tortfeasors were proximately caused by the failure of respondents to erect a barrier between the highway and the beach. Respondents counter this contention, asserting that the beach was dangerous solely as a result of the third party's conduct.[7] Apparently, it is respondent's position that the lack of a barrier does not constitute a condition of the property. We disagree and hold that appellants' allegations provide a sufficient

---

[7]Respondents made repeated references in their brief to the Court of Appeal decision in *Peterson* v. *San Francisco Community College Dist.** (Cal.App.), in support of their contention that the beach was not dangerous. However, our Supreme Court has granted hearing in this decision and the Court of Appeal decision is no longer precedent.

*Reporter's Note: For Supreme Court opinion see 36 Cal.3d 799 [205 Cal.Rptr. 842, 685 P.2d 1193].

nexus between the condition of the property and the third party's activity so as to defeat the demurrers.

An argument similar to that urged by the respondents herein was asserted by the State and rejected in *Ducey, supra,* 25 Cal.3d 707. In *Ducey,* our Supreme Court summarized that argument as follows: "[W]hile the state acknowledges that it would bear responsibility for accidents resulting, for example, from a pothole or crack in a state-maintained roadway, the state takes the position that it is entitled to be absolved of liability as a matter of law whenever an accident occurs 'merely' because of the absence of some protective traffic safeguard [a median barrier] and not as a result of a physical aberration or defect of a public highway. Because in the instant case the conduct of the Glass vehicle [the vehicle which crossed the median and struck the plaintiffs' vehicle], rather than any defect in the roadway, was, in the state's view, the precipitating cause of the accident, the state maintains that the trial court should have directed a verdict in its favor." (*Id.,* at p. 715.)

In response to this argument, our Supreme Court stated: "As we shall explain, [the] authorities clearly demonstrate that when, as in this case, the state has actual or constructive notice of a 'dangerous condition' on a public highway, the state bears an affirmative obligation to take reasonable steps to protect the public against the danger. If the state fails to take such reasonable protective measures and its failure proximately causes plaintiff's injuries, the state may be held liable for the resulting damages. [¶] . . . [S]ection 835 specifically provides that when a public entity has actual or constructive notice of a dangerous condition, the entity's liability may be predicated on its failure to take protective measures to safeguard the public from dangers that may not necessarily be of the entity's own creation. This reading of section 835 is confirmed by reference to section 830, subdivision (b), which specifically defines the 'protect against' language of section 835, subdivision (b) to include 'providing safeguards against a dangerous condition.' [Fn. omitted.] Thus, the language of the applicable statutes refutes the state's argument that it is under no 'duty' to protect the public against dangers that are not created by physical defects in public property. [Citation.]

"Moreover, the governing case law similarly rejects the state's initial argument. This court's landmark case of *Baldwin* v. *State of California* (1972) 6 Cal.3d 424 . . . is directly in point. In *Baldwin,* the plaintiff was injured while attempting to make a left-hand turn on a heavily traveled four-lane highway; no separate left-hand turn lane had been provided, and while waiting to make the turn the plaintiff was rear-ended and pushed into oncoming traffic.

"The plaintiff in *Baldwin* sued both the driver who had rear-ended his car and the state; as in the instant case, in support of the claim against the state plaintiff introduced evidence of numerous similar accidents that had previously occurred at the same site. Plaintiff also adduced the testimony of highway safety experts as to the availability of safety measures, e.g., prohibiting left-hand turns or constructing an overpass or a separate left-hand turn lane, which the state could have implemented to protect against the 'dangerous condition' created by the existing traffic conditions. Despite the fact that plaintiff's injury was not precipitated by a pothole or other 'physical defect' in the public roadway, our court held that plaintiff's evidence would 'amply support a finding that the intersection represented a dangerous condition' (*id.,* at p. 428), and that the state could be held liable for its failure to take reasonable steps to protect against such danger.

"In similar fashion, numerous Court of Appeal decisions decided over the past two decades confirm the conclusion that a public entity's liability under section 835 may be predicated upon a failure of the entity to provide adequate safeguards against a dangerous condition of which the entity had actual or constructive notice. [Citations.]" (*Ducey, supra,* at pp. 715-718.)

Section 835 provides that when a public entity has actual or constructive knowledge of a dangerous condition, the State bears an affirmative obligation to take reasonable steps to protect the public against the danger. We cannot say as a matter of law that the respondents did not have a "duty" to erect a barrier between the highway and the beach to protect foreseeable users from the foreseeable use of the beach without due care. We also cannot conclude as a matter of law that the lack of a barrier was not a condition of the property which proximately caused appellants' injuries.[8]

---

[8]Under somewhat similar facts, the appellate court in *Bartell* v. *Palos Verdes Peninsula Sch. Dist.* (1978) 83 Cal.App.3d 492 [147 Cal.Rptr. 898], held that the plaintiffs had failed to allege a dangerous condition. In *Bartell,* a 12-year-old boy was killed on a school playground while school was not in session. The boy had gained access to the playground through a gate that was either unlocked or in disrepair. The appellate court stated, "[r]egardless of whether the fence was in disrepair or the gate unlocked, we do not have a situation where the defect, in and of itself, was inherently dangerous. [Citations.] Even though we assume the school district knew of the dangerous activity (a skateboard version of crack-the-whip), knew the playground was the only unobstructed area where the game could be played locally, and knew the playground was customarily used for such games, the alleged defects merely allowed access to the area, and as such they go to the question of the school district's duty of supervision and control, if any, over its property, and not to the existence of a dangerous condition. The injuries were the direct result of the dangerous conduct of plaintiff's son and his companion and not of any defective or dangerous condition of the property. We therefore conclude that plaintiffs have not pleaded a dangerous condition of public property within the meaning of Government Code sections 830, 835. [Fn. omitted.]" (*Bartell, supra,* 83 Cal.App.3d at pp. 497-498.)

Inasmuch as *Bartell* was decided before *Ducey* and the explicit pronouncement by our Supreme Court that a public entity may be liable for failing to provide safeguards against dangerous conditions, we decline to follow the holding in *Bartell.* We note, however, that

## II

*Neither Appellants' Negligence nor Their Possible Status as Trespassers Defeat Their Recovery*

▮ Respondents argue that they did not owe appellants a duty of care because appellants were on the beach at 2 a.m., in violation of the City's ordinance section 4202a. We disagree.

Assuming, arguendo, that appellants' conduct of being on the beach at night in violation of the City's code constitutes negligence (see Evid. Code, § 669), that negligence, as previously indicated, is a defense available to the respondents but does not necessarily exonerate them from liability.

▮ We also disagree with respondents' contention that a public entity's liability to an injured plaintiff is a direct function of the plaintiff's status as a trespasser, licensee, or invitee. ▮ Before the enactment of sections 830 and 835, it was established that, "the rules with respect to the measure of care to be exercised by owners of private property toward invitees and licensees have no application to the duty imposed by the statute on a county, municipality or school district to maintain public property in a safe condition." (*Gibson* v. *County of Mendocino* (1940) 16 Cal.2d 80, 84 [105 P.2d 105].) This rule was purely one of statutory construction which sprang solely from an interpretation of the language of the former Public Liability Act of 1923 (Stats. 1923, ch. 328, § 2, p. 675.) In enacting section 830, however, it is evident that the Legislature did not intend to change this rule. The Law Revision Commission's comment to section 830 provides: "A 'dangerous condition' is defined in terms of 'foreseeable use.' This does not change the pre-existing law relating to cities, counties and school districts. These entities are liable under Government Code [förmer] Section 53051[9] for maintaining property in a condition that creates a hazard to foreseeable users even if those persons use the property for a purpose for which it is not designed to be used or for a purpose that is illegal. *Acosta* v. *County of Los Angeles*, 56 Cal.2d 208, 14 Cal.Rptr. 433, 363 P.2d 473 (1961); . . ." (Law Revision Com. com. to § 830, 32 West's Ann. Gov. Code (1980 ed.) at pp. 264-265, Deering's Ann. Gov. Code, § 830 (1982 ed.) p. 221; see also, *Delta Farms Reclamation Dist.* v. *Superior Court* (1983) 33 Cal.3d

---

*Bartell* does not involve the conduct of a third party user. The only conduct alleged was the negligence of the deceased and his companion on the playground. *Bartel* may be interpreted as a situation where public property, i.e., a properly constructed playground, did not create a *substantial* risk of harm to foreseeable users of the property when used with due care.

[9]Section 53051, added by Statutes 1949, chapter 81, section 1, page 285, and repealed by Statutes 1963, chapter 1681, section 18, page 3286, was derived from and in all relevant respects is identical to the Public Liability Act of 1923.

699, 706 [190 Cal.Rptr. 494, 660 P.2d 1168].) In *Acosta* v. *County of Los Angeles, supra,* 56 Cal.2d 208 [14 Cal.Rptr. 433, 363 P.2d 473, 88 A.L.R.2d 1417], our Supreme Court held that the recovery might be proper even though the plaintiff was illegally on a sidewalk at the time of his injury.

 Even if the plaintiff's status as a trespasser, a licensee, or invitee is relevant, the rigid distinctions based on that status have for the most part been eliminated by our Supreme Court in *Rowland* v. *Christian* (1968) 69 Cal.2d 108 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496]. *Rowland* held that "continued adherence to the common law distinctions can only lead to injustice." (*Id.,* at p. 119.) The court held that, "although the plaintiff's status as a trespasser, licensee or invitee may in the light of the facts giving rise to such status have some bearing on the question of liability, the status is not determinative." (*Ibid.*) The same should be true when the defendant is a public entity.[10]

In view of *Acosta* and *Rowland,* respondents' contention that appellants' claim should be defeated because of their trespasser status on the beach is without merit.

### III

*The Reasonableness of a Public Entity's Action Under Section 835.4 in a Particular Situation Is a Question of Fact for the Jury and Cannot Ordinarily Be Determined on Demurrer*

 Respondents argue that it would not be reasonable to find in this case that the lack of a barrier constituted a dangerous condition to the property. Such a holding, they fear, might require the erection of a barrier the length of the California coastline.

This argument ignores the fact that future plaintiffs must allege foreseeability before they can successfully recover from a public entity for injuries caused by the lack of a barrier. In any event, the question of the reasonableness of a public entity's action in any particular situation is one of fact for a jury. It ordinarily cannot be decided on a demurrer. (See, e.g., *Baldwin* v. *State of California, supra,* 6 Cal.3d 424, 436-438 and *De La*

---

[10]Appellants make an equally meritless argument concerning the City's Code section 4202a. They contend that respondents' failure to place on the sign posted in the parking lot in question a prohibition against both sleeping and loitering on the beach as provided by the City's Code, somehow limits the effect of section 4202a. To uphold such an argument would require public entities to list completely all ordinances relevant to a particular area or activity for fear of limiting the effect of these ordinances if they failed to do so. We decline to place such a burden on public entities.

*Rosa* v. *City of San Bernardino* (1971) 16 Cal.App.3d 739, 749 [94 Cal.Rptr. 175].)

A contention similar to respondents' contention herein was rejected in *Ducey, supra,* 25 Cal.3d 707. In *Ducey,* the State argued that it could not afford to construct median barriers as a matter of financial reality on all freeways on which such barriers were needed and asked the Supreme Court to relieve it of liability as a matter of policy where it failed to install such barriers. Our Supreme Court refused, stating that "the question of the reasonableness of the state's action in light of the practicability and cost of the applicable safeguards is a matter for the jury's determination. [Citations.]" (*Id.,* at p. 720.) The court then continued, "the jury's ultimate verdict [in favor of the plaintiff] demonstrates that it concluded that the state had not established that its failure to provide a median barrier *in the vicinity of the accident* was reasonable in light of the practicability and cost of such a safeguard." (Italics added.) (*Id.,* at p. 720.)

In the case on appeal, respondents may yet be able to convince a judge or jury that, in light of the circumstances, their failure to erect a barrier was reasonable as provided in section 835.4. Should they fail at this task, this decision shall not stand for the proposition that it is unreasonable not to erect barriers along other parts of the California coastline. Such a determination must be made by a trier of fact based on the particular circumstances of each case. This court cannot say as a matter of law that under the circumstances presented below, respondents' failure to erect a barrier was reasonable.

## IV

*Appellants' Cause of Action Is Not Barred by Section 845*

Respondents contend that although the language of appellants' second amended complaint pleads liability based on section 835, appellants actually attempt to predicate liability on a failure to provide adequate police protection. Respondents urge that such liability is barred by the provisions of section 845.[11] While we agree that section 845 provides a general immunity for failure to provide adequate police protection (see, e.g., *Susman* v. *City of Los Angeles* (1969) 269 Cal.App.2d 803 [75 Cal.Rptr. 240]), we disagree that the provisions of that section defeat appellants' cause of action.

---

[11]Section 845 provides that, "[n]either a public entity nor a public employee is liable for failure to establish a police department or otherwise provide police protection service or, if police protection service is provided, for failure to provide sufficient police protection service."

Respondents rely principally on *Moncur* v. *City of Los Angeles* (1977) 68 Cal.App.3d 118 [137 Cal.Rptr. 239], to support their contention. In *Moncur,* many individuals were in a common area of the Pan American terminal at Los Angeles International Airport. A bomb had been placed in a coin-operated locker which was located in an area near the Pan American facility. Both the locker and the common areas of the Pan American facility were completely accessible to the public. Mr. Moncur was killed and Mr. Shaughnessy injured in the subsequent explosion. Moncur's heirs and Shaughnessy brought tort actions against the City of Los Angeles. "Central to the complaint in both cases [was] the theme that public lockers afford a convenient place of concealment for anyone disposed to plant an explosive device in the airport terminal; that their location in this case in an area of easy accessibility constituted a dangerous condition of the airport property— a condition which could have been eliminated, as the City well knew, by relocating the existing search and surveillance system which is used to screen persons boarding airplanes." (*Moncur, supra,* 68 Cal.App.3d at p. 122.)

The *Moncur* decision states, "[i]n an effort to escape the immunity provisions of Government Code section 845, plaintiffs maintain that the complaints in no way allege that the City had failed to provide adequate police protection but rather that the complaints specifically addressed themselves to maintenance of a dangerous condition on public property." (*Id.,* at p. 122.)

"Stripped of conclusionary allegations the complaints before us do not plead a defect in the physical condition of the property but instead allege that the property was in a dangerous condition because the City did not undertake to search and screen persons who sought to use the public locker facilities. In short, a failure to take police action. [¶] The complaints here set forth no facts which give rise to the duty on the part of the City to expand its policing of the airport terminal. Nor do the complaints allege facts from which it could even be inferred that the condition of the terminal was the 'cause' of the explosion. This tragic event was solely the result of the criminal conduct of a third person unaided by any act or omission on the part of the City." (*Id.,* at p. 126.)

We agree with the holding in *Moncur* that the cause of the injuries was the act of a third party. The condition of the terminal could only be considered a "cause" if the third party's actions were foreseeable. There was no indication in Moncur's complaint that the city had any knowledge of previous similar attacks or credible information which would have put the city on notice concerning this particular attack. *Moncur* correctly pointed out that, "although one may be able to foresee the likelihood of aberrant be-

havior in these turbulent times and perhaps divine with reasonable success the general behavioral form which it will take, the precise means which a deranged person or a fanatic will employ is based upon too many variables for accurate prediction. [Citation.] [¶] In brief, while it is known that fanatics and lunatics can be harmful to others, their devices and strategems are as diverse as the variety of mental ills or compulsive radicalism which prompt their behavior. To follow plaintiffs' argument to its logical extreme the city would have to place a security screen at least at the doors of the entire terminal or more likely at the point of vehicular access to the entire grounds." (*Id.*, at p. 125.)

The heart of the complaints in *Moncur* was the allegation that the city had failed to provide adequate police protection. Although the appellants alleged the existence of a "dangerous condition" the court concluded that the "airport building was not itself a dangerous or defective piece of public property. The danger was created by the act of placing the bomb on the property. The bomb was unrelated to the physical condition of the terminal and could not in any sense constitute a defect in something of which it was not a constituent part. [¶] The physical condition of the locker was not defective in any sense. Plaintiffs' theory is that the location of the locker created the dangerous condition. The location, of course, was not per se dangerous, but plaintiffs' theory is that the location was dangerous because it was not within the security perimeter. That adds up to saying that the locker constituted a dangerous condition because the City did not search persons who used them." (*Id.*, at p. 124.)

*Moncur* thus reiterates the proposition that third party conduct by itself (i.e., placing the bomb in the locker) cannot render public property "dangerous" within the meaning of section 835. (*Hayes* v. *State of California* (1974) 11 Cal.3d 469 [113 Cal.Rptr. 599, 521 P.2d 855].) The condition, if any, which made the property dangerous was the failure of the city to search and screen persons using the property. The city could not erect barriers to keep all persons out of the terminal, nor could it simply remove the lockers and alleviate the danger. The failure to search and screen persons in *Moncur* was the failure to take police action. Accordingly, the Court of Appeal determined that the actions were barred by section 845.

In the instant case, the appellants have sufficiently alleged that the third party actions were foreseeable. The respondents' maintenance of a dangerous condition may therefore still be a proximate cause of appellants' injuries. In addition, appellants have alleged that a condition of the property itself, i.e., the failure to erect a barrier, and not mere failure to provide police protection, was a proximate cause of their injuries. The appellants' first and third causes of action are not barred by section 845.

V

*The Liability of a Public Entity Cannot Be Predicated on Its Failure to Post Warnings of Possible Criminal or Negligent Use of the Property*

■ Appellants also allege that respondents' liability may be predicated on a failure to provide warnings regarding the possible unauthorized and/or criminal use of the beach. This particular contention was refuted in *Hayes* v. *State of California, supra,* 11 Cal.3d 469.

In *Hayes,* two men were asleep at night on a beach when they were attacked and beaten by unknown persons. The plaintiffs attempted to base liability upon the failure of the defendant public entity to warn of possible criminal activity on the beach. Our Supreme Court upheld the trial court's order sustaining the demurrer and stated: "While we acknowledge that the warning called for by plaintiffs might be beneficial in some instances [fn. omitted], both public awareness of the prevalence of crime and policy factors militate against imposing a governmental duty to warn in circumstances such as these. [¶] First, it is indisputable that the public is aware of the incidence of violent crime, particularly in unlit and little used places. Thus, it would serve little purpose for government to further remind the public of this unfortunate circumstance in society. . . . [¶] Finally, the disquieting spectre of warning signs hanging in areas where crime has occurred—not unlike the leper's bell—manifests the unreasonableness of the duty sought to be imposed by plaintiffs on their government." (*Id.,* at pp. 472-473.)

Our Supreme Court recently reiterated the view expressed in *Hayes* in *Davidson* v. *City of Westminster* (1982) 32 Cal.3d 197 [185 Cal.Rptr. 252, 649 P.2d 894], stating, "[w]hile under some circumstances the police may conclude that such a course of conduct [warning of criminal conduct] is prudent and necessary, our past decisions teach that it is inappropriate to impose such a duty—which may paralyze a neighborhood—under pain of tort liability." (*Id.,* at pp. 208-209.) As in *Hayes* and *Davidson,* respondents in this case had no duty to warn of the possible unauthorized and/or criminal use of the property under the circumstances presented herein.

DISPOSITION

For the reasons expressed above, the order of the superior court sustaining the demurrer is reversed.

In making this disposition, we reiterate the position expressed herein that appellants must bear the burden of proving their allegations concerning the prior knowledge of the defendant public entities regarding the prior use of

this particular beach and parking lot by third persons improperly using vehicles on this beach which caused injuries to others. In the absence of such a showing by appellants, respondents would be entitled to a summary judgment pursuant to Code of Civil Procedure section 437c.

The trial court is directed to order the respondents to file an answer within 30 days of the issuance of the remittitur.

Danielson, J., and Arabian, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied March 22, 1984.