[No. D018228. Fourth Dist., Div. One. Dec. 6, 1994.]

KAILA SKY PEKAREK, a Minor, etc., et al., Plaintiffs and Appellants, v. CITY OF SAN DIEGO, Defendant and Respondent.

**COUNSEL**

Castillo & Guevara, William J. Phippard, Roberta R. Sistos and Susana M. Mahady for Plaintiffs and Appellants.

John W. Witt, City Attorney, Eugene Gordon, Chief Deputy City Attorney, and Carol S. Leimbach, Deputy City Attorney, for Defendant and Respondent.

## OPINION

**BENKE, J.**—The critical question presented on this appeal is whether the defendant city could have reduced the risk of injury to the plaintiffs by altering the physical characteristics of a street the city owns. Because the plaintiffs have not suggested any such alteration, we affirm the summary judgment entered in favor of the city.

### FACTUAL BACKGROUND

The circumstances which give rise to this appeal are not in dispute. On June 1, 1990, Kaila Pekarek was five years old. On that day she crossed the 6600 block of Springfield Street in San Diego with her seven-year-old sister Lakshmi. Kaila and Lakshmi were crossing the street so that they could get ice cream from an ice-cream truck operated by Nghiep Buu Truong. After Kaila bought her ice cream she started running back across Springfield Street. Lakshmi saw a van coming and tried to pull Kaila out of the way. Lakshmi was only partially successful. Because Truong's ice-cream truck obstructed her view, the driver of the van, Lois Louise Pischinger, did not see Kaila. Pischinger's van struck Kaila, crushing her leg and breaking her jaw. Because of the severity of the injury, Kaila's leg was amputated.

### TRIAL COURT PROCEEDINGS

On May 31, 1991, Kaila and Lakshmi filed a complaint against Truong, Pischinger and defendant and respondent City of San Diego (city). The complaint alleged Truong was negligent in operating his ice-cream truck, that Pischinger was driving negligently and that the city, which owns the 6600 block of Springfield Street, was liable because the street was maintained in a dangerous condition. The complaint also alleged the city was liable for creating a nuisance.

Kaila and Lakshmi eventually settled their claims against Truong and Pischinger. The city then moved for summary judgment. The city argued Kaila and Lakshmi could not show any defect in the design, construction or maintenance of Springfield Street and that a city ordinance[1] which permitted ice-cream vendors to operate on its streets immunized the city from nuisance liability.

In opposition to the motion Kaila and Lakshmi argued the city created a dangerous condition and a nuisance by permitting ice-cream trucks to operate on city streets. They submitted the declaration of a traffic consultant

---

[1] San Diego Municipal Code section 54.0122.

who, among other matters, stated that between May 1990 and November 1991 the city's traffic and engineering department recorded 30 so-called "ice-cream truck" injuries to children under the age of 14. Although none of the 30 accidents were in the 6600 block of Springfield Street, according to the consultant, most of the injuries occurred in a manner similar to the accident which injured Kaila.

In addition the plaintiffs submitted a number of national transportation studies which identified ice-cream truck accidents as a particular class of pedestrian injuries. The studies suggested adoption of an ordinance which would: require drivers to stop before passing ice-cream trucks; require ice-cream trucks to be equipped with visual warning devices; and restrict the location where ice-cream trucks may operate to low-speed and low-traffic volume streets.

The trial court granted the city's motion and entered judgment against Kaila and Lakshmi. They filed a timely notice of appeal.

### Issues on Appeal

As they did in the trial court, on appeal Kaila and Lakshmi argue that in permitting operation of ice-cream trucks on its streets the city created a dangerous condition and a nuisance.

### Discussion

### I

"We begin by restating familiar principles which govern our review following entry of summary judgment: 'The purpose of a summary judgment motion is to determine if there are any triable issues of material fact, or whether the moving party is entitled to judgment as a matter of law. [Citations.] The summary judgment is proper only if the affidavits in support of the moving party would be sufficient to sustain a judgment in his favor and his opponent does not by affidavit show such facts as may be deemed by the judge hearing the motion sufficient to present a triable issue. [Citation.] The affidavits of the moving party are strictly construed, while those of the party opposing the motion are liberally construed. [Citations.] If the affidavits of the party opposing the motion contain factual averments within the general area of the issues framed by the pleadings, they are sufficient to make out a prima facie case. [Citation.] Any doubts as to the propriety of granting the motion must be resolved in favor of the party opposing the motion. [Citations.]' [Citation]" (*Sachs* v. *Exxon Co., U.S.A.* (1992) 9

Cal.App.4th 1491, 1496 [12 Cal.Rptr.2d 237], quoting *Cascade Gardens Homeowners Assn.* v. *McKellar & Associates* (1987) 194 Cal.App.3d 1252, 1255-1256 [240 Cal.Rptr. 113].) With these principles in mind, we turn to the parties' substantive contentions.

## II

Government Code[2] section 830 defines "dangerous condition" as "a condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used."[3] ■ In interpreting section 830 "courts have consistently refused to characterize harmful third party conduct as a dangerous condition—absent some concurrent contributing defect in the property itself." (*Hayes* v. *State of California* (1974) 11 Cal.3d 469, 472 [113 Cal.Rptr. 599, 521 P.2d 855] (*Hayes*).)

In *Hayes* the plaintiffs were beaten by unknown persons while sleeping on a public beach one evening. They argued the beach was dangerous because the state permitted it to be used at all hours and failed to warn users about the possibility of criminal conduct. The court in *Hayes* rejected this argument and stated: "to the extent warning of past criminal conduct might serve a beneficial purpose, it—unlike cautioning against a specific hazard in the *use* of property—admonishes against any use of the property whatever, thus effectively closing the area. But determining and regulating the use of public property are better left to legislative and administrative bodies, rather than to the judiciary." (*Hayes, supra*, 11 Cal.3d at p. 473.)

The central teaching of *Hayes*, that a plaintiff must demonstrate that some characteristic of a governmental entity's property contributed to his injury, has been consistently reaffirmed. For instance following *Hayes* the court decided *Ducey* v. *Argo Sales Co.* (1979) 25 Cal.3d 707 [159 Cal.Rptr. 835, 602 P.2d 755] (*Ducey*). In *Ducey* the plaintiffs were injured when a car crossed a freeway median and struck their car. They alleged the freeway was dangerous because it did not have a cross-median barrier. In upholding a

---

[2]All statutory references are to the Government Code unless otherwise specified.

[3]Section 835 provides: "Except as provided by statute, a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either: [¶] (a) A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or [¶] (b) The public entity had actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition."

verdict in the plaintiffs' favor the court held that the absence of appropriate safeguards could be a dangerous condition and could give rise to liability when, in combination with the negligence of a third party, the condition caused injury. (*Ducey, supra*, 25 Cal.3d at pp. 715-721.) "[S]ection 835 specifically provides that when a public entity has actual or constructive notice of a dangerous condition, the entity's liability may be predicated on its failure to take protective measures to safeguard the public from dangers that may not necessarily be of the entity's own creation. This reading of section 835 is confirmed by reference to section 830, subdivision (b), which specifically defines the 'protect against' language of section 835, subdivision (b), to include 'providing safeguards against a dangerous condition.' Thus, the language of the applicable statutes refutes the state's argument that it is under no 'duty' to protect the public against dangers that are not created by physical defects in public property. [Citation.]" (*Ducey, supra*, 25 Cal.3d at pp. 716-717, fn. omitted.)

*Ducey* in turn was followed by *Peterson v. San Francisco Community College Dist.* (1984) 36 Cal.3d 799, 812-813 [205 Cal.Rptr. 842, 685 P.2d 1193] (*Peterson*). In *Peterson* the plaintiff was assaulted on a college campus in broad daylight. She alleged the college had notice of similar assaults and that the parking lot where she was assaulted was dangerous because of "thick and untrimmed foliage and trees" which assisted her assailant. In reversing a judgment entered following an order sustaining the college's demurrer, the court found that the college's failure to trim the foliage or warn her of the danger gave rise to a claim under section 830. The court found that students can expect that a college campus "will be free from physical defects and that school authorities will also exercise reasonable care to keep the campus free *from conditions which increase the risk of crime.*" (36 Cal.3d at p. 813, italics added.)

In a pair of cases decided by Division Three of the Second District the principles set forth in *Hayes, Ducey* and *Peterson* were refined still further. In *Swaner v. City of Santa Monica* (1984) 150 Cal.App.3d 789 [198 Cal.Rptr. 208] (*Swaner*), the plaintiffs were lying on a beach near a parking lot. Around 2 a.m. they were struck by a vehicle driving on the beach. They argued that the beach was dangerous because there were no barriers between the parking lot and the beach. Relying on *Ducey* the court reversed an order sustaining the defendant city's demurrer. The court found the plaintiffs' "allegations provide a sufficient nexus between the condition of the property and the third party's activity so as to defeat the demurrers." (*Id.* at pp. 806-807.)

In *Rodriguez v. Inglewood Unified School Dist.* (1986) 186 Cal.App.3d 707 [230 Cal.Rptr. 823] (*Rodriguez*), a high school student was stabbed by a

nonstudent. He alleged the high school was dangerous within the meaning of section 830 because the school had a long history of violence and school officials did not take adequate security measures. After it carefully considered *Hayes, Peterson* and its own opinion in *Swaner,* the Court of Appeal rejected the student's contention that the district's failure to provide adequate security created a dangerous condition: "In Rodriguez's complaint, we have the bare allegations that he was stabbed by a nonstudent while he was on the campus. No *physical defects* or *conditions* of the campus are alleged which would increase the risk of crime. The allegation that other such acts occurred on the campus prior to his assault adds notice but does not bring his factual situation within the legal parameters of a dangerous condition to state a cause of action. Further, it is difficult to imagine how the few paragraphs of charging allegations could be strengthened with adequate facts to state a cause of action.

"*Swaner* v. *City of Santa Monica, supra,* 150 Cal.App.3d 789, comes closest to providing such a rationale. . . .

"The holding in *Swaner,* which came out of this division, was based on its unique facts, and a line is thereby drawn. It appears all the relevant cases are substantially controlled by their distinct factual situation. The physical condition of the public property under scrutiny in *Swaner* was the parking lot's *lack* of a fence or other barrier to prevent vehicles from gaining access to the beach.

"Rodriguez's further allegations that the district 'failed to prevent students and other persons from bringing weapons onto the school grounds when such precaution could have been taken by defendants at a minimal expense of money and time . . . [, and] failed to prevent persons without legitimate business on the campus from gaining access to the school grounds[,]' add nothing to establish a dangerous condition.

"Had *Swaner* involved the fact situation of armed criminals walking onto the beach from the parking lot at 2 a.m. and assaulting beach users, the case result would not be the same. No simple fence or barrier separating beach and parking lot 'at a minimal expense of money and time' would have prevented such persons from gaining access to the beach. The latter situation presents the issue of providing police protection service for which a public entity is immune under section 845.

"On the other hand, if Rodriguez's complaint alleged Rodriguez was injured by vehicles entering onto the campus due to the lack of a fence or barrier and thereafter racing around, which activity was known to the

district, *Swaner* might apply. But Rodriguez's complaint sets forth the infinitely more difficult fact situation to control—students and nonstudents with easily concealed weapons coming onto the campus and assaulting innocent students.

"Rodriguez's allegations clearly have nothing to do with the physical *condition* of the property, or the misuse of it in any way, but relate only to 'the condition of persons on that property.' [Citation.]" (*Rodriguez, supra,* 186 Cal.App.3d at pp. 718-720.)

We think that what the court said in *Rodriguez* accurately crystallizes the requirements of section 830. Although there need not be any physical defect in property owned by a public entity, there must be something about the physical condition of the property where an injury occurred which increased the risk of harm to plaintiffs.[4]    ■    Thus, in order to establish that the 6600 block of Springfield Street was in a dangerous condition, Kaila and Lakshmi must demonstrate the city could have reduced the risk of harm to them by doing something to the street as opposed to the vehicles and pedestrians who use the street.

In examining the declaration of the plaintiffs' traffic expert and the national studies the plaintiffs submitted, we find nothing which suggests that any change in Springfield Street would have diminished the risk of injury. The outright ban on operation of ice-cream trucks suggested by plaintiffs, although it would have an affect on use of the city's streets, would not alter the condition of the streets themselves. (See *Rodriguez, supra,* 186 Cal.App.3d at pp. 719-720.) Similarly the requirements of the model ordinance—that drivers stop when ice-cream trucks have visual warnings— amount to regulation of drivers and ice-cream trucks, not regulation of the 6600 block Springfield Street.

The closest plaintiffs' documents come to drawing a nexus between the risks posed by the operation of ice-cream trucks and *any* particular location

---

[4]One of the cases cited by the court in *Hayes* and one the plaintiffs in this case rely upon is *Quelvog* v. *City of Long Beach* (1970) 6 Cal.App.3d 584, 591 [86 Cal.Rptr. 127] (*Quelvog*). In *Quelvog* the plaintiffs' decedent was killed when the ladder he was on was struck by an electric autoette being operated on a city sidewalk. In making a claim against the city the plaintiffs argued the sidewalks were in a dangerous condition because the city encouraged the use of autoettes on its sidewalks and in fact had purposely made it easy for autoettes to use city sidewalks by creating depressions in sidewalk curbing. The court found the plaintiffs' allegation that the city had created and maintained easy access to its sidewalks by autoettes, along with the allegation that the city had otherwise promoted such use, were sufficient to state a dangerous condition claim against the city. (*Quelvog, supra,* 6 Cal.App.3d 584.) *Quelvog* does not relieve plaintiffs from the burden of demonstrating that some physical aspect of Springfield Street increased the risk of harm to them.

is the limitation on operation of ice-cream trucks to low-speed and low-traffic volume streets which would be imposed by the model ordinance. The city's ordinance does not contain such a restriction[5] and arguably if an injury occurred on a high traffic volume or high speed street, that condition of the city's street would be sufficient to establish a dangerous condition within the meaning of section 830. However the limitation on permissible locations which would be imposed by the model ordinance is of no assistance to Kaila and Lakshmi. They do not contend Springfield Street is either a high speed or high traffic volume street which, because of those conditions, made operation of ice-cream trucks on the street unsafe.

In sum there is nothing in this record which suggests the 6600 block of Springfield Street could be altered or regulated in a manner which would have diminished the risk to plaintiffs. Thus, while the 30 ice-cream truck accidents disclosed in this record suggest the city should consider greater regulation of ice-cream trucks, these plaintiffs cannot maintain a claim the city created a dangerous condition on Springfield Street.

### III

San Diego Municipal Code section 54.0122, subdivision a, in pertinent part states: "Purpose and Intent. The Council hereby finds and declares that the unrestricted sale or distribution or the offering for sale or distribution of food, beverages, merchandise or services from vehicles or mobile food units within or upon public streets, sidewalks and rights of way, public property or in the vicinity of school buildings, under certain circumstances, constitutes a danger to public safety because of the likelihood of injury to pedestrians thereby exposed to hazards from other vehicular traffic in the vicinity."

San Diego Municipal Code section 54.0122, subdivision c, goes on to expressly permit the sale of food from vehicles when ". . . the vehicle is first lawfully parked or stopped and then remains for no longer a period of time than is necessary to complete the immediate sale. An operator is considered to be engaged in an 'immediate sale' when there are patrons waiting in line for service. Operators of such vehicles shall maintain a minimum clear space of (10) feet both in front of and behind the vehicle to allow for pedestrian safety and safe sight distance for approaching motorists. No sales or distribution shall be made when the designated minimum clear space of ten (10) feet does not exist."

Under Civil Code section 3482: "Nothing which is done or maintained under the express authority of a statute can be deemed a nuisance." Because

---

[5]See part III, *post.*

operation of ice-cream trucks on the city's streets is specifically permitted by Municipal Code section 54.0122, such permission cannot give rise to a nuisance. (*Monterey Club* v. *Superior Court* (1941) 48 Cal.App.2d 131, 145-148 [119 P.2d 349].)

We of course agree with the plaintiffs that Civil Code section 3482 does not immunize a public entity from liability " 'unless . . . it can be fairly stated that the [L]egislature contemplated the doing of the very act which occasions the injury.' " (*Venuto* v. *Owens-Corning Fiberglass Corp.* (1971) 22 Cal.App.3d 116, 129 [99 Cal.Rptr. 350]; see also *Greater Westchester Homeowners Assn.* v. *City of Los Angeles* (1979) 26 Cal.3d 86, 97 [160 Cal.Rptr. 733, 603 P.2d 1329]; *Varjabedian* v. *City of Madera* (1977) 20 Cal.3d 285, 291 [142 Cal.Rptr. 429, 572 P.2d 43].) However the face of Municipal Code section 54.0122, subdivision a, could not make it any clearer that in authorizing the operation of ice-cream truck the city council carefully considered the risks to pedestrians such as Kaila and Lakshmi and authorized the very conduct which led to their injuries.

Thus the trial court did nor err in dismissing the plantiffs' nuisance claim.

Judgment affirmed.

Work, Acting P. J., and Huffman, J., concurred.

A petition for a rehearing was denied December 23, 1994, and appellants' petition for review by the Supreme Court was denied February 23, 1995.