[No. F002704. Fifth Dist. Aug. 30, 1984.]

KIMBERLY ALEXANDER, Plaintiff and Appellant, v.
THE STATE OF CALIFORNIA ex rel. DEPARTMENT OF
TRANSPORTATION, Defendant and Respondent.

**[Opinion certified for partial publication.[1]]**

[1]Parts I-B and II are not published, as they do not meet the standards for publication contained in rule 976(b), California Rules of Court.

COUNSEL

Miles, Sears & Eanni, Richard C. Watters and William J. Seiler for Plaintiff and Appellant.

Robert F. Carlson, Ronald I. Harrison, George L. Cory and Richard A. Wehe for Defendant and Respondent.

OPINION

MARTIN, J.—

### STATEMENT OF THE CASE

Plaintiff appeals from a judgment notwithstanding the verdict (Code Civ. Proc., § 629) and order granting a new trial (Code Civ. Proc., § 657) to defendant State of California, arising from a motor vehicle/personal injury action.

### STATEMENT OF FACTS

In November 1977, plaintiff Kimberly Alexander, her husband Rodney, and her 15-month-old son spent the Thanksgiving holiday with relatives in

Atascadero, California. On Saturday morning, November 26, 1977, they began the return trip to their Visalia home. Their child became ill along the way and plaintiff and the child got into the back seat of their 1970 Ford LTD station wagon and fell asleep.

Rodney Alexander drove northbound on state route 41 (hereinafter 41). When he came to the intersection of 41 and Interstate Highway 5 (hereinafter I-5) he passed under the I-5 overpass going on a slight down grade at a speed of 50 miles per hour. He checked his speedometer at that point and took his foot off the gas. The station wagon was in the right-hand lane of two northbound lanes on 41.

Immediately north of I-5, there were three intersections on 41. The first was located at Ward Drive, a T-intersection to Alexander's right; the second was located at Bernard Drive, where one could turn both right and left from 41; and the third was at Hubert Way, a T-intersection off to Alexander's left. Prior to reaching Ward Drive, there was also an off-ramp from northbound I-5 merging with traffic northbound on 41.

The Alexander vehicle was proceeding northbound on state route 41 when it collided at the intersection of Bernard Drive with a 1974 Plymouth Duster driven by 19-year-old Kevin Terrio. Terrio was proceeding eastbound on Bernard Drive. The speed limit on 41 at this location was 45 miles per hour.

Rodney Alexander was familiar with the area and had driven it previously about 25 times. He was aware the speed limit was 45 miles per hour. Terrio testified he too was familiar with the intersection because he had worked at two service stations located there and had driven the intersection hundreds of times. Traffic on Bernard is controlled by stop signs at the intersection of 41.

Alexander testified there was other traffic on the road with him. He first observed the Terrio vehicle stopped at the stop sign on Bernard when the Alexander vehicle was about 1,100 feet away. His attention was then diverted from the Terrio vehicle by a westbound vehicle on Bernard making a right-hand turn onto the slow lane of northbound 41, directly in front of Alexander. At that point Alexander was traveling with the flow of traffic. He then saw Terrio move from the stop sign, pull across the southbound lanes of 41, and stop in the center area dividing the northbound and southbound lanes. As Alexander passed Ward Drive and approached Bernard Drive, he saw the Terrio vehicle crossing 41 immediately in front of him. He applied his brakes but too late to avoid a collision. The cars collided at the intersection of Bernard Drive and the right-hand northbound lane of 41.

Terrio testified he had just dropped his girlfriend off at a Carl's Jr. restaurant near the intersection. He was intending to cross 41 on eastbound Bernard to purchase gas for his car. Traffic conditions were not heavy. Terrio stopped at the stop sign at 41 and looked in both directions. He saw no traffic coming from his left (southbound) but could not recall whether any traffic was coming northbound on 41. He proceeded to cross the intersection, never looked again for cross traffic on 41, and did not stop before the collision. He did not see the Alexander vehicle until it was about 10 feet away, too late to avoid a collision. Terrio testified visibility from the intersection was open and he could see all the way to I-5, about one-half mile away. Terrio was not distracted by anything and could not explain his failure to see the approaching Alexander vehicle.

California Highway Patrol (CHP) Officer Ralph Phillips investigated the accident and determined the two vehicles collided in the intersection of the slow lane of northbound 41 and eastbound Bernard. He concluded that driver impairment from such things as drugs or alcohol was not a factor in the accident.

Plaintiff Kimberly Alexander testified that immediately after the accident she tried to sit up but her legs would not move. Dr. Jeffrey Basford, a doctor of physical medicine rehabilitation, testified he examined plaintiff and found she was a complete L-2-3 paraplegic.

Plaintiff sued the State of California, the County of Kings, and Doe defendants alleging a dangerous condition of public property.[2]

Plaintiff's accident reconstruction expert Dr. William Blythe testified the Alexander vehicle was traveling between 53 and 66 miles per hour immediately prior to the brake application preceding the collision. He also concluded the Alexander vehicle was traveling between 42 and 56 miles per hour and Terrio's vehicle was traveling roughly 15 to 21 miles per hour at impact. Defendant's accident reconstruction expert Dr. David M. Yoshida testified the Alexander vehicle was traveling between 57.5 and 68.4 miles per hour immediately prior to the brake application.

Kenneth Walsh is traffic engineer for Caltrans District 6, which includes the accident site and is based in Fresno. He testified the intersection of Bernard and 41 was not dangerous as it existed on November 26, 1977. Walsh cited the one-half mile visibility in support of his opinion. Plaintiff's consulting traffic engineers Dr. Thomas G. Schultz and Mr. Robert W.

---

[2]The trial court ruled defendant State of California was immune from liability based upon design of the highway.

Crommelin both testified the intersection was in a dangerous condition which condition could have been remedied by the use of flashing beacons.

The case was tried twice. The first trial concluded in a hung jury and a mistrial was declared by the court. The second trial resulted in a verdict in favor of plaintiff and against defendant State of California in the amount of $667,700. Judgment for plaintiff was entered on April 4, 1983. Defendant moved for a judgment notwithstanding the verdict and alternatively for a new trial. After hearing, the trial court granted both motions and entered judgment in favor of defendant. The trial court stated the following reasons for its rulings:

"The primary contention is the definition of 'use with due care' as contained in Government Code Section 830(a). Defense, at trial, requested a proposed instruction number 13 and questioned Plaintiffs' experts by defining 'due care' to include the requirement of obeying all traffic laws. The Court refused the instruction and the Plaintiffs' expert conceded no risk of injury upon use of the definition.

"The Appellate Courts, unfortunately, have failed to so define 'use with due care' but have left the definition open. Having further reflected upon the issue, reviewing the cases cited by the parties, and, in particular BAJI 3.13, it is the Court's opinion that 'use with due care' does include obeying traffic laws.

"Further, by substituting SR 41 for Phelan Avenue and Bernard Drive for Voorhees Avenue, we have almost an identical situation as in Mittenhuber v Herrera, 142 CA3d 1 with one glaring exception. The intersection in Mittenhuber was a blind intersection and here, vision is 'unlimited'. The Court could recite the factors herein, the same as in Mittenhuber; however, the substantive facts are so similar as to render the exercise unnecessary. For all the reasons stated therein, the Court herein finds as a matter of law, no dangerous condition existed at the intersection of SR 41 and Bernard Drive.

"Therefore, because of the error in instruction, and the error in the definition of 'use with due care' as presented to the jury, Defendants' Motion For New Trial is granted. Further, for the reasons as set forth above, Defendants are granted judgment notwithstanding verdict."

## DISCUSSION

### I. DID THE TRIAL COURT ERR IN DETERMINING THAT A DANGEROUS CONDITION DID NOT EXIST AT THE SUBJECT INTERSECTION AS A MATTER OF LAW?

A. Plaintiff contends the trial court erroneously granted judgment notwithstanding the verdict based on absence of a dangerous condition of public property.

Code of Civil Procedure section 629 provides in relevant part: "The court, before the expiration of its power to rule on a motion for a new trial, either of its own motion, after five days' notice, or on motion of a party against whom a verdict has been rendered, shall render judgment in favor of the aggrieved party notwithstanding the verdict whenever a motion for a directed verdict for the aggrieved party should have been granted had a previous motion been made.

". . . The court shall not rule upon the motion for judgment notwithstanding the verdict until the expiration of the time within which a motion for a new trial must be served and filed, and if a motion for a new trial has been filed with the court by the aggrieved party, the court shall rule upon both motions at the same time. . . .

". . . . . . . . . . . . . . . . . . . . . . .

". . . If the court grants the motion for judgment notwithstanding the verdict or of its own motion directs the entry of judgment notwithstanding the verdict and likewise grants the motion for a new trial, the order granting the new trial shall be effective only if, on appeal, the judgment notwithstanding the verdict is reversed, and the order granting a new trial is not appealed from or, if appealed from, is affirmed."

██ The trial judge's power to grant a judgment notwithstanding the verdict is identical to his power to grant a directed verdict. If the evidence is conflicting or if several reasonable inferences may be drawn, the motion for judgment notwithstanding the verdict should be denied. (*Hauter* v. *Zogarts* (1975) 14 Cal.3d 104, 110 [120 Cal.Rptr. 681, 534 P.2d 377, 74 A.L.R.3d 1282].) ██ The cardinal requirement for a directed verdict is that there be no substantial conflict in the evidence. (*Estate of Fleming* (1926) 199 Cal. 750, 754 [251 P. 637].) ██ The trial court may not weigh the evidence or judge the credibility of the witnesses on a motion for directed verdict. (*Golden* v. *Conway* (1976) 55 Cal.App.3d 948, 954 [128 Cal.Rptr. 69].)

In granting judgment notwithstanding the verdict, the trial court concluded (1) "use with due care" includes obedience to traffic laws; (2) *Mittenhuber* v. *City of Redondo Beach* (1983) 142 Cal.App.3d 1 [190 Cal.Rptr. 641] was so factually similar that the result there controlled the instant case; and therefore (3) no dangerous condition existed at the subject intersection as a matter of law.

Government Code section 830, subdivision (a), states: "(a) 'Dangerous condition' means a condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used."

Government Code section 830.2 states: "A condition is not a dangerous condition within the meaning of this chapter if the trial or appellate court, viewing the evidence most favorably to the plaintiff, determines as a matter of law that the risk created by the condition was of such a minor, trivial or insignificant nature in view of the surrounding circumstances that no reasonable person would conclude that the condition created a substantial risk of injury when such property or adjacent property was used with due care in a manner in which it was reasonably foreseeable that it would be used."

Technically, Government Code section 830.2 is unnecessary because it merely declares the rule that would be applied in any event when a court rules upon the sufficiency of the evidence. ■ It is included in the Tort Claims Act to emphasize that courts are required to determine there is evidence from which a reasonable person could conclude that a substantial, as opposed to a possible, risk is involved before they may permit the jury to find a condition is dangerous. (See Cal. Law Revision Com. com. to Gov. Code, § 830.2, 32 West's Ann. Gov. Code (1980 ed.) pp. 277-278.)

In the instant case, the trial court's memorandum of decision did not articulate any standard for reviewing the motion for judgment notwithstanding the verdict. Nor are the court's comments at the hearing on the motion of much assistance in this regard. There the trial court stated:

"THE COURT: All right. I agree with you. I can read. You have spelled out, I think, most everything in the briefs, and I will comment I have spent considerable time in the last couple of days reading the briefs and many of the cases cited in the briefs. I get to the point that reading—is it Ducey? I guess that's correct in that pronunciation?

"MR. CORY: Yes.

"THE COURT: —versus Argo Sales, one of the leading cases, and I come down to the point that I agree with the dissent, which seems to make substantial more sense than the majority opinion. I agree with the comments of the dissent that, as related to this case, particularly, it practically makes the State an insurer of drivers on the roads. My problem is that I am in the dissent.

"I have two major problems that I feel that; number one is the use of due care, which you have raised substantially. I tend to go off on a little bit different tack on that, in that, as I see it, there perhaps may have been a dangerous condition at these intersections. I will leave that aside for a minute. I think that's a little different, because I cannot find that there is a substantial risk. I mean there is a trivial risk, but there is a trivial risk at every intersection, and I think this is probably no different than 90 percent of the other intersections throughout the State. So I have a problem finding a dangerous condition.

"But assuming for a minute there is a dangerous condition, then I have a very difficult time arriving at causation, finding causation, because of Mr. Terrio, of course, driving out in front of Mr. Alexander, Mr. Alexander speeding, and both drivers knowing the intersection very, very well—or Mr. Terrio much more so than Mr. Alexander, and I think that evidence is all uncontradicted.

"How does the Judge find that whatever dangerousness there might have been at that intersection caused the injuries here? And that's kind of where I wind up with the thing, at least. So maybe. . . ."

The court took the matter under submission and ruled subsequent to the hearing. Although the court's comments suggest a familiarity with Government Code section 830.2, the court did not cite or apply that rule in its memorandum of decision. ■ Even had the court cited to Government Code section 830.2, its stated reasons for granting judgment notwithstanding the verdict were legally insufficient. We address each reason in turn. *First,* the court stated: "The appellate courts, unfortunately, have failed to so define 'use with due care' but have left the definition open. Having further reflected upon the issue, reviewing the cases cited by the parties, and, in particular BAJI 3.13, it is the court's opinion that 'use with due care' does include obeying traffic laws."

BAJI No. 3.13 provides: "Every person who, himself, is exercising ordinary care, has a right to assume that every other person will perform his duty and obey the law, and in the absence of reasonable cause for thinking otherwise, it is not negligence for such a person to fail to anticipate an

accident which can be occasioned only by a violation of law or duty by another person."

Defendant requested BAJI No. 3.13 and the trial judge approved the instruction, without objection, and it was read to the jury. Neither plaintiff nor defendant mentioned this instruction in the respective points and authorities on defendant's motion for new trial and judgment notwithstanding the verdict. The trial judge apparently concluded that based on the language of BAJI No. 3.13, the term "use with due care" contained in Government Code section 830, subdivision (a) does include obeying traffic laws.

The trial court's reasoning in reference to BAJI No. 3.13 is unclear. Perhaps the court concluded the state could not be found responsible for failing to anticipate an accident proximately caused by Terrio's inattentiveness and/or Alexander's speeding. In the alternative, the court may have concluded Terrio and/or Alexander failed to exercise ordinary care and therefore had no right to assume the other's good conduct. Or the court may have applied some entirely different rationale which completely eludes us. However, irrespective of the construction employed by the trial court in applying BAJI No. 3.13 here, it would appear that construction has no application to the dangerous condition issue under the Tort Claims Act. ■ "Instructions defining for the jury the statutory concept of a dangerous condition should avoid creating any implication that due care on the part of the plaintiff or of third persons must be established by plaintiff as a condition of recovery. The Tort Claims Act does not require plaintiff to prove that the property was actually being used with due care at the time of the injury, either by himself or by a third party (*e.g.*, driver of automobile in which plaintiff was riding as a passenger)." (Van Alstyne, Cal. Government Tort Liability Practice (Cont.Ed.Bar 1980) § 3.85, p. 315.)

■ *Second,* the court determined "use with due care" includes obeying traffic laws. None of the cases cited by the parties supports this conclusion.

In *Ducey* v. *Argo Sales Co.* (1979) 25 Cal.3d 707 [159 Cal.Rptr. 835, 602 P.2d 755], plaintiff recovered damages for injuries received in a cross-median freeway accident. The state contended the absence of a cross-median barrier could not be regarded as creating a substantial risk of injury when the freeway was being used with due care. The state argued most cross-median accidents resulted from the operation of motor vehicles by freeway users in a negligent fashion. The court rejected this position, stating: "Although it may well be that many, perhaps even most, cross-median accidents result from the negligence of one or more drivers, the evidence in the instant case was clearly sufficient for the jury to conclude that the lack of a median barrier created a substantial risk of injury even in the absence of negligent

conduct. One state highway engineer testified at trial that in cross-median accidents 'it is not uncommon to have the violating vehicle be an innocent party.' In addition, during the course of the trial numerous expert witnesses identified various situations in which cross-median accidents might occur in the absence of negligence, as when accidents result, for example, from mechanical failure, sudden illness, or animals in the road.

"Moreover, in evaluating the evidence and applying the definition of 'dangerous condition' contained in the judge's instructions, the jurors were free to draw upon their own common driving experiences which might well have suggested to them that many traffic accidents, including cross-median accidents, occur without the negligence of any party." (*Id.*, at pp. 719-720.)

In *Muffett* v. *Royster* (1983) 147 Cal.App.3d 289 [195 Cal.Rptr. 73], the Second District Court of Appeal affirmed a nonsuit in favor of cross-defendant State of California in a wrongful death action. Cross-complainants argued the trial court erred in holding, as a matter of law, any driver exceeding the posted speed limit was not using due care. The Court of Appeal held the existence of a dangerous condition and use with due care were factual questions. The court stated: "We think this conclusion is pragmatically sound. First of all, it is conceivable that some rare traffic situations may occur where going five miles per hour over the rate on the sign on the curve may actually avoid a collision with other vehicles, and, that, under those circumstances the act of going over the posted speed may be prudent, and 'due care.'

"Furthermore, to hold that going over the posted speed on a curve is not 'due care' as a matter of law would encourage the state to avoid liability by posting lower and lower speed limits, and the state would have no incentive to remedy potentially dangerous situations upon a highway.

"Our holding here is supported by those cases which hold that speed in excess of a mere prima facie limit is not negligence as a matter of law, and the burden is on the party asserting negligence. (*Miller* v. *Northwestern Pac. R.R. Co.* (1962) 206 Cal.App.2d 500 . . . .) If speeding in excess of the prima facie limit is not negligence as a matter of law, then going faster than the posted speed (whether characterized as 'advisory' or not) should not indicate 'lack of due care' as a matter of law." (*Id.*, at pp. 305-306, fn. omitted.)

In *Swaner* v. *City of Santa Monica* (1984) 150 Cal.App.3d 789 [198 Cal.Rptr. 208], plaintiffs were struck by a vehicle while they were lying on Santa Monica State Beach. They sued the defendant city, County of Los

Angeles and state for their injuries, alleging failure to fence a parking lot adjacent to the beach. Plaintiffs alleged the third party driver gained access to the beach through the parking lot. The Second District Court of Appeal reversed an order sustaining defendants' demurrer without leave to amend. The court held negligence or lack of due care exhibited by a plaintiff-user of public property does not necessarily defeat his cause of action. However, the plaintiff is required to establish the condition created a hazard to a person who foreseeably would use the property or adjacent property with due care. So long as a plaintiff-user can establish a condition of the property creates a substantial risk to any foreseeable user of the public property who uses it with due care, he has successfully alleged the existence of a dangerous condition regardless of his personal lack of due care. Although a public entity may assert the negligence of a plaintiff-user as a defense, it has no bearing on the determination of a dangerous condition in the first instance.

Finally, the case of *Mittenhuber* v. *City of Redondo Beach, supra,* 142 Cal.App.3d 1 is factually distinguishable from the instant case in several respects. First, in *Mittenhuber* the intersection was blind, and a privately owned wall and fence at the northeast corner apparently prevented motorists and bicyclists from seeing each other until after they were committed to the intersection. In the instant case the intersection was visible to both parties. Second, in *Mittenhuber* the plaintiff bike rider traveled on a street controlled by stop signs. In the instant case plaintiffs traveled on a state highway uncontrolled by stop signs or traffic lights. Third, *Mittenhuber* was a pleading case in which the lower court sustained a demurrer without leave to amend. The Second District Court of Appeal affirmed, finding the complaint failed to establish, as a matter of law, the existence of a dangerous condition at the intersection. The court determined the 10 factors relied upon by plaintiff did not set forth facts sufficiently detailed and specific to support a dangerous condition allegation. In contrast, the instant case was tried on the merits and the jury returned a verdict for plaintiff.

Thus, case law does not support the trial court's conclusion. To the contrary, these recent cases, taken together, clearly establish the rule that the term "use(d) with due care," contained in Government Code section 830, subdivision (a), defining "dangerous condition," does not as a matter of law include obeying traffic laws. As stated in *Muffett* v. *Royster, supra,* 147 Cal.App.3d 289, the existence of a dangerous condition and use with due care are factual questions. (At pp. 305-306.) In the instant case, none of the reasons cited by the trial court supports the granting of a motion for judgment notwithstanding the verdict. It is apparent that the court did not apply the test of Government Code section 830.2 in reaching its conclusions. Considering the reasoning of the court's "Memorandum of Decision" in conjunction with the court's on-the-record statements at the hearing, it is

not clear whether the trial court concluded, or merely vacillated, on the question of whether a dangerous condition had been shown by the evidence. The trial court then stated: "How does the Judge find that whatever dangerousness there might have been at that intersection caused the injuries here? And that's kind of where I wind up with the thing, at least . . . ." The trial court was clearly now discussing proximate causation, that is, the question whether the dangerous condition proximately caused or proximately contributed to the accident in which plaintiff sustained such serious injuries. As stated in *Swaner* v. *City of Santa Monica, supra,* 150 Cal.App.3d 789, so long as a plaintiff-user can establish a condition of the property creates a substantial risk to any foreseeable user of public property who uses it with due care, he has successfully established the existence of a dangerous condition. Although the public entity may assert the negligence of a plaintiff-user as a defense, it has no bearing on the determination of a dangerous condition in the first instance. They are separate questions of fact, for the trier of fact, and may not be combined or intertwined as the trial court did in this case.

Thus, we conclude that the trial court erred in granting defendant's motion for judgment notwithstanding the verdict for the reasons stated in its memorandum of decision and under the test prescribed in Government Code section 830.2.

B.. . . . . . . . . . . . . . . . . . . . . . .*

The order granting judgment for defendant notwithstanding the verdict and the order granting new trial are respectively reversed. The verdict for plaintiff is reinstated and the trial court is ordered to enter judgment thereon.

Andreen, Acting P. J., and Quaschnick, J.,† concurred.

Respondent's petition for a hearing by the Supreme Court was denied October 31, 1984.

---

*See footnote 1, *ante,* page 890.
†Assigned by the Chairperson of the Judicial Council.