Filed 9/4/14  Davis v. State of California CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| NIKKI DAVIS, | |
| Plaintiff and Appellant, | G049805 |
| v. | (Super. Ct. No. CIVMS800662) |
| STATE OF CALIFORNIA, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of San Bernardino County, Rodney A. Cortez, Judge.  Affirmed.

Walter Clark Legal Group, Walter T. Clark; Law Office of Daniel J. Koes and Daniel J. Koes, for Plaintiff and Appellant.

Ronald W. Beals, Chief Counsel for the State of California, Department of Transportation, Carol Quan, Deputy Chief Counsel, Daniel Mansueto and Matthew S. Lipinski, Deputy Attorneys for Defendant and Respondent.

Nikki Davis appeals from the judgment in favor of the State of California (the State) in this personal injury action.  Davis was injured when her car was rear-ended by another car as she was stopped on a four-lane state highway waiting to make a left turn onto a dirt road.  She contended the lack of a dedicated left turn lane at the intersection constituted a dangerous condition of public property.  (Gov. Code, § 835.)[1]  Following a bench trial, the trial court agreed the absence of a left turn lane at the intersection was a dangerous condition, but it found the dangerous condition was not a proximate cause of Davis's injuries and the sole cause of Davis's harm was the negligence and inattention of the driver of the car that hit Davis's car.  On appeal, Davis contends that as a matter of law, if the lack of a left turn lane was a dangerous condition, then it was a proximate cause of the accident; the trial court applied incorrect legal standards; and there is insufficient evidence to support its finding the driver who hit her car was negligent.  We reject her contentions and affirm the judgment.

FACTS & PROCEDURE

*Accident Location:  State Route 62 Joshua Tree*

The accident occurred at the intersection of State Route 62 (SR-62) and Juniper Road near the town of Joshua Tree.  SR-62 is an east-west highway; Juniper Road is a north-south dirt road that crosses SR-62.  Davis was traveling east on SR-62 and had stopped to make a left turn onto Juniper Road, when her car was struck from behind by a car driven by Amber Delote.

Although originally SR-62 was a two-lane highway, by 1970 it was widened to a four-lane highway with two 12-foot wide lanes going each direction with a two-foot paved outside shoulder on each side.  Over the years, the average daily traffic volume increased significantly, from 5,700 vehicles in 1970, to 18,000 vehicles in 2007.

---

[1]     All further statutory references are to the Government Code, unless otherwise indicated.

In 1996, when the federal speed limit was abolished, the posted speed limit on SR-62 went from 55 to 65 miles per hour (MPH), although just east of Juniper Road it drops to 55 MPH and then to 45 MPH as the road continues east into Joshua Tree. When the accident occurred in 2007, the east and west bound lanes of SR-62 at the Juniper Road intersection were separated by double solid yellow lines and there was no dedicated left turn lane. Sunny Vista Road intersects with SR-62 about 670 feet (1/8 mile) west of Juniper Road. In the vicinity of the accident, SR-62 is a completely straight road and descends very slightly from the west going east towards Juniper Road and onward.

In 1998, complaints were made to the California Department of Transportation (Caltrans) and the California Highway Patrol (CHP) about the dangers posed by the lack of a left turn lane on SR-62 in the vicinity of Juniper Road. A CHP officer who was stationed in the area wrote a memorandum to the CHP explaining the stretch of SR-62 encompassing the Juniper Road intersection was "in dire need of a two-way left turn lane" (capitalization omitted), due to the increase in the speed limit on the highway and the numerous rear-end collisions that had occurred in that area. Two citizens who worked at businesses in the vicinity wrote to the CHP about accidents they witnessed, or had been in, involving cars attempting to make left turns from SR-62 in the area, and requested installation of a two-way left turn lane. A memorandum from the commander of the area CHP station to Caltrans, advised "a two-way left turn lane is badly needed" and suggested interim measures until a left turn lane could be constructed. Caltrans's 1998 response to the CHP acknowledged the increase in accidents due to increased traffic volumes, and advised it was initiating an expedited project to widen SR-62 to install a continuous two-way left turn lane on an approximately three-quarter mile stretch of SR-62 from Sunny Vista Road (west of Juniper Road) to Hallee Road (east of Juniper Road). Apparently, although the project was initiated it was not funded. There was evidence Caltrans requested in 2005 that the project be installed and evidence of the project going out for bid in 2006. By the time of Davis's accident, Sunny Vista

3

Road, and the next two intersections to the west, had left turn lanes but there were not left turn lanes at Juniper Road or the next two intersections east of Juniper Road.

*The Accident*

The accident occurred on October 31, 2007, at about 3 p.m. Davis was driving east on SR-62, intending to making a left turn onto Juniper Road where she lived. Davis testified it was a clear day and the eastbound traffic was light. Davis was in the inside number one lane, which she considered the fast lane. She turned on her left blinker at Sunny Vista Road and began slowing down right after Sunny Vista Road. Her blinkers and brake lights were in good working order. As she approached the Juniper Road intersection, Davis saw there were two vehicles behind her—one in each lane. The vehicle in the number one lane, changed lanes and both vehicles passed her. Davis came to a full stop in the number one lane to make her left turn once there was a clearing in the oncoming westbound traffic. At trial, she testified that before being struck from behind by Delote, she had been waiting to make her turn for "forty-five, fifty seconds[,] [m]aybe a minute," was checking her rearview mirror for approaching traffic, and did not see any other cars pass her while she waited. She did not see Delote's car approach her from behind. Delote crashed into the back of Davis's car, pushing Davis's car into the westbound lane where she was struck by another car. Davis suffered injuries and was hospitalized for a week. By the time of trial in 2011, she continued to experience pain from her injuries.

*Expert Testimony*

Dale Dunlap was a traffic engineer called by Davis as an expert witness. He opined the intersection was dangerous and the lane configuration (lack of left turn lane), the increased speed limit and high traffic volume were the reasons for the number of rear-end collisions in that area. He explained that at the posted 65 MPH speed limit, a driver had limited time to decide what to do (i.e., slow down or change lanes) once he or she saw a car stopped in the road. He testified that a driver going between 60 MPH and

4

70 MPH would need a "decision sight distance"—what it would take to look around, and make changes to speed and/or change lanes without sudden erratic maneuvers—of 1,100 feet. Nonetheless, he agreed Delote's vehicle had completely unobstructed sight distance of "well over" 2,000 feet as it approached Davis's car. He also testified the stopping distance for a car traveling at 65 MPH was 660 feet for wet pavement the approximate distance from the Sunny Vista Road intersection to the Juniper Road intersection, and less if the pavement was dry, which in this case it was. Dunlap agreed the stopping sight distance and decision sight distance fully satisfied design criteria. Dunlap assumed that if a reasonable driver saw a vehicle stopped waiting to make a left turn, he or she would "slow down" and "do something instead of run into the vehicle" such as moving over to the number two lane and driving around the stopped vehicle if possible.

Neil Clark, an accident reconstruction expert, was also called by Davis. He agreed with Dunlap that an eastbound driver could see the Juniper Road intersection from well west of Sunny Vista Road and there were no line of sight issues—the sight distance was "virtually unlimited." He opined the stopping distance for a car on dry pavement going 65 MPH was 165 feet.

Clark testified the skid marks showed Delote did not begin hard braking until she was approximately 33 to 36 feet behind Davis's car. Based on skid marks and the damage to the vehicles, he opined Delote's pre-impact braking speed was 49 MPH; her impact speed was 42.7 MPH. The skid marks indicated Delote was driving in a straight line and did not attempt any kind of steering before the wheels locked up.

Clark reviewed Delote's and Davis's depositions as part of his review of the case. In her deposition, Delote gave no indication she had any "line-of-sight" issues. She became aware a vehicle was braking in front of her. Although Davis testified it was her habit and practice to turn on her blinker, Delote could not remember if Davis's turn signals were on. Delote testified in her deposition that she saw brake lights ahead of her,

5

and may have begun braking earlier, but became distracted, possibly due to sneezing. Clark testified the "panic breaking, plus her indication that she, for some period of time, lost visual contact with the vehicle ahead of her and didn't have a continuous understanding of what was happening with the car ahead of her would represent some level of inattention." Clark testified Delote could have made a very safe lane change with very minimal rightward steering if she had been observing the entire time from as far back as Sunny Vista Road, until up to two thirds of the way from Sunny Vista Road to the Juniper Road intersection. There were no other road conditions, or other vehicles that would have prevented Delote from seeing Davis or taking evasive action.

Timothy Reust was the State's accident reconstruction expert. He opined that Delote's inattention was the cause of the accident. In preparing his opinions, he reviewed Davis's, Delote's, and Clark's depositions. He agreed there were no line of sight issues. The road was a completely straight road, slightly declining so an eastbound driver was looking down slightly, which improved visibility. There was good contrast between the road, Davis's car, and area vegetation and buildings, all of which enhanced the visibility of Davis's car. Delote had indicated in her deposition she was familiar with the area and drove the road three or four times a week. Davis testified she had her foot on the brake, so her tail lights and the center mounted brake light in the rear window would all have been illuminated, and would have been visible for at least 800 feet. Ruest opined Delote began braking at 64.5 MPH and impact was at 54.8 MPH. Ruest testified a car going 65 MPH would need 326.8 feet in which to perceive, react, brake, and stop. Davis's stopped car would have been plainly visible from at least 1,500 feet away. Reust testified that Delote began perceiving Davis's at about 193.3 feet from the car but did not react or try to stop until she was extremely close.

CHP Officer R.G. Luck was one of the officers who responded to the accident. She determined Delote was at fault for the accident and cited her for violating Vehicle Code section 22350—the basic speed law. Luck had been involved in over

800 accident investigations. When asked if she had an opinion as to whether roadway conditions contributed to or caused the accident, she replied, "I believe . . . Delote caused the collision. And the roadway, although at the time it didn't have a turn lane, ultimately, she was responsible to pay attention while she was driving and be able to react to vehicles stopping ahead of her making a left turn."

*Statement of Decision*

Following the bench trial, the court issued a tentative statement of decision that eventually became its final statement of decision (with only one alteration we describe below). The court identified the issues before it as whether the intersection constituted a dangerous condition of public property within the meaning of sections 830 and 835 for vehicles making left turns from SR-62 onto Juniper Road without a separate left turn lane; and if so, was the State immune from liability under section 835.4 [reasonableness of act or omission], or section 830.6 [design immunity]. The court set forth the basic background facts, and observed that although Delote was not called as a witness at trial, portions of her deposition testimony were presented through expert opinion testimony.

In addressing the first issue, the court set forth the requisite elements Davis had to prove to establish public entity liability for a dangerous condition of public property: (1) The intersection was in a dangerous condition on the date of Davis's accident; (2) Davis's injury was caused by the dangerous condition; (3) the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred; and (4) the State had actual or constructive notice of the dangerous condition.

As to the first element, the court found the SR-62/Juniper Road intersection constituted a dangerous condition based on the following factual findings. The posted speed limit going through the SR-62/Juniper Road intersection was 65 MPH. There was no center left turn lane, or other traffic controls at the intersection, but there were left turn lanes at the two immediate intersections to the west. Sunny Vista Road was 670 feet

7

west of Juniper Road.  The "[d]ecision sight distance, or the amount of roadway needed to see an object and bring a vehicle safely to a stop, while traveling at 65 miles an hour, is 1,100 feet."  There was evidence going back nine years of complaints made to Caltrans of an increase in rear-end collisions due to the increased speed, increased traffic volume, and the lack of left turn lanes.  Davis's traffic engineer opined, "drivers trying to turn left onto Juniper [Road] faced unnecessary hazards whenever they stopped because of the high speed traffic approaching them from behind without any traffic signal, without any safe haven like a left turn lane, and as a matter of driver safety, the intersection should have had a two way left turn lane.  All this evidence compels this court to conclude that *depending upon factors, including traffic conditions throughout the day*, the intersection created a substantial risk of injury when the road was used with due care and in a manner in which it is reasonably foreseeable that it will be used."  (Italics added.)

The court went on to address element number 2—causation.  It concluded Davis "failed to establish that the injury was proximately caused by the dangerous condition."  "[T]he alleged dangerous condition was NOT a substantial factor in causing [Davis's] injuries.  Based on the evidence presented at trial, including the light traffic conditions at the time of the injury . . . the negligence and inattention of . . . Delote was the sole cause of [Davis's] harm."  The court made factual findings based on Davis's testimony it was daylight, clear and dry, the eastbound traffic was light, and there were no issues of visibility for eastbound traffic.  Davis had her turn signal on, brakes pressed, and brake lights illuminated.  While she waited for about 30 seconds, only two other vehicles approached her car and both were able to see Davis, and easily go around her— underscoring the traffic was light.  "What was of importance to this court in reaching its decision as to whether the . . . dangerous condition caused [Davis's] injury, was the testimony that eastbound and westbound traffic was light at the time of the collision."

The court explained Reust and Clark both testified from their review of Delote's deposition that she was familiar with the accident location and drove the road

8

several times a week and there was no evidence there were any other cars around her that "would have obscured her vision of traffic ahead of her or prevented her from moving into the number two lane to easily steer around [Davis]." Reust testified based on the geometrics of the roadway, and Davis's flashing brake lights and turn signals, there were "sufficient indicators to any reasonable due care driver that they were approaching slowing or stopped traffic and would need to lower their own speed or steer around the vehicle ahead of them." The court found based on the testimony of Clark and Reust, at a speed of 64.5 MPH, Delote could have safely brought her car to a stop within 326 feet ("[A] normal driver, traveling 64.5 [MPH] on this type of pavement, should have been able to see and perceive an object in the roadway ahead of them and safely brake their vehicle to a stop within their lane of travel within 326 feet.") The evidence showed she did not have any perception until she was 193 feet away from Davis's vehicle. The skid marks were evidence of panic braking and inattention.

The trial court concluded, "Based on . . . Delote's familiarity with the roadway, the weather and environmental conditions at the time of the accident, the light traffic conditions, [Davis's] brake light and turn signal indicators and the geometrics of the roadway, specifically the extensive and unobstructed available sight distance, there was no reason [Delote] should not have been able to see [Davis] stopped at the intersection and safely avoid this accident. The court finds . . . Delote was not acting with due care. The court finds [her] negligence was the sole cause of the . . . accident. [¶] In conclusion, [Davis] failed to meet her burden of establishing the dangerous condition of public property at the [SR-62/Juniper Road intersection] caused her injuries." The court did not address the remaining elements or the State's immunity defenses.

Davis filed objections to the tentative statement of decision. In sum, she objected there was no evidence to support the court's finding the traffic conditions were light or the light traffic conditions alleviated the risk. She objected there was no basis for

9

the court's conclusion Delote was inattentive because she did not testify at trial and the expert's testimony concerning Delote's deposition testimony to that effect could not be relied upon by the court because of its "hearsay nature." Additionally, Davis objected there was no requirement Davis prove the dangerous condition somehow caused Delote to be negligent, and in any event, there was "no evidence only speculation, that Delote" was negligent. And she argued the court's assumption an attentive driver could have avoided hitting Davis was inconsistent with its finding the intersection constituted a dangerous condition.

The trial court rejected Davis's objections and issued a final statement of decision identical to its tentative statement of decision with one exception. The final sentence of its analysis of element 1—dangerous condition—read, "All this evidence compels this court to conclude that the intersection created a substantial risk of injury when the road was used with due care and in a manner in which it is reasonable foreseeable that it will be used[,]" and omitted that the risk "depend[ed] upon factors, including traffic conditions throughout the day . . . ."

Judgment was entered for the State. Davis filed a timely notice of appeal.

DISCUSSION

The gist of Davis's argument on appeal is the trial court in this bench trial erred as a matter of law by finding the lack of a left turn lane on SR-62 at Juniper Road constituted a dangerous condition because of the increased risk of rear-end collisions, yet it was not a proximate cause of this particular accident. We reject Davis's contentions. The trier of fact could reasonably find that because the circumstances that made the lack of a left turn lane a dangerous condition (i.e., the impact increased speed and traffic volume on the highway had on a driver's decision sight distance or stopping distance) were not present in this case, the sole cause of *this* accident was Delote's inattention. And because that conclusion is supported by substantial evidence, we must affirm the judgment.

10

*1. General Principles of Liability for Dangerous Condition of Public Property*

We begin with general legal principles. A public entity is not liable for an injury arising out of the alleged act or omission of the entity except as provided by statute. (§ 815.) Section 835 is the sole statutory basis for a claim imposing liability on a public entity based on the condition of public property. (*Brown v. Poway Unified School Dist.* (1993) 4 Cal.4th 820, 829.)

Under section 835, a public entity may be liable if it creates an injury-producing dangerous condition on its property or if it fails to remedy a dangerous condition despite having notice and sufficient time to protect against it. (*Grenier v. City of Irwindale* (1997) 57 Cal.App.4th 931, 939.) Section 830 defines a "'[d]angerous condition'" as "a condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used." To constitute a dangerous condition, an injured plaintiff need not prove the public "'property was actually being used with due care at the time of the injury, either by himself or by a third party . . . .'" (*Alexander v. State of California ex rel. Dept. of Transportation* (1984) 159 Cal.App.3d 890, 899 (*Alexander*); see also *Bonanno v. Central Contra Costa Transit Authority* (2003) 30 Cal.4th 139, 153, fn. 5 (*Bonanno*); *Ducey v. Argo Sales Co.* (1979) 25 Cal.3d 707, 718-719 (*Ducey*).)

With regard to third party conduct, a public entity may be liable for a dangerous condition of public property even where the immediate cause of a plaintiff's injury is a third party's negligent or illegal act if some physical characteristic of the property exposes its users to increased or intensified risk of injury from third party negligence or criminality. (*Bonanno, supra,* 30 Cal.4th at p. 152.)

To recover in an action against a public entity under section 835, a plaintiff must prove: "(1) a dangerous condition existed on the public property at the time of the injury; (2) the condition proximately caused the injury; (3) the condition created a

11

reasonably foreseeable risk of the kind of injury sustained; and (4) the public entity had actual or constructive notice of the dangerous condition of the property in sufficient time to have taken measures to protect against it." (*Brenner v. City of El Cajon* (2003) 113 Cal.App.4th 434, 439; § 835.)

It is well established "the existence of a dangerous condition is ordinarily a question of fact." (*Bonanno, supra,* 30 Cal.4th at p. 148.) It is similarly well established that whether a dangerous condition is a proximate cause of a plaintiff's injury is generally a question of fact. (*Hoyem v. Manhattan Beach City Sch. Dist.* (1978) 22 Cal.3d 508, 520; *Lawson v. Safeway Inc.* (2010) 191 Cal.App.4th 400, 418.) "To establish causation, a plaintiff must prove that the defendant's conduct was a 'substantial factor' in bringing about his or her harm. [Citations.] Stated differently, evidence of causation 'must rise to the level of a *reasonable probability based upon competent testimony*. [Citations.] "A possible cause only becomes 'probable' when, in the absence of other reasonable causal explanations, it becomes more likely than not that the injury was a result of its action." [Citation.] [A party's] conduct is not the cause in fact of harm "'where the evidence indicates that there is less than a probability, i.e., a 50-50 possibility or a mere chance,'" that the harm would have ensued.' [Citation.]" (*Bowman v. Wyatt* (2010) 186 Cal.App.4th 286, 312.)

In this case, the trial court found the absence of a left turn lane constituted a dangerous condition, and the State does not challenge that conclusion. It also found the dangerous condition was not a proximate cause of *this* accident—*this* accident was caused solely by Delote's negligence.

"A judgment or order of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness. [Citations.]" (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133 (*Arceneaux*).) Specifically, "[u]nder the doctrine of implied findings, the reviewing court must infer, following a bench trial, that the trial court impliedly made every factual finding necessary

12

to support its decision." (*Fladeboe v. American Isuzu Motors, Inc.* (2007) 150 Cal.App.4th 42, 48 (*Fladeboe*).)

To avoid such implied findings, a party must follow the two-step process provided by Code of Civil Procedure sections 632 and 634. (*Arceneaux*, *supra*, 51 Cal.3d at pp. 1133-1134.) "[F]irst, a party must request a statement of decision as to specific issues to obtain an explanation of the trial court's tentative decision [citation]; second, if the court issues such a statement, a party claiming deficiencies therein must bring such defects to the trial court's attention to avoid implied findings on appeal favorable to the judgment [citation]." (*Id.* at p. 1134.) If a party fails to bring omissions or ambiguities in the statement of decision to the trial court's attention, "that party waives the right to claim on appeal that the statement was deficient in these regards," and the reviewing court will infer the trial court made implied factual findings to support the judgment, even on issues not addressed in the statement of decision. (*Ibid.*; see *Fladeboe*, *supra*, 150 Cal.App.4th at pp. 48, 59-60.)

We review both express and implied findings of fact in a statement of decision for substantial evidence. (*SFPP v. Burlington Northern & Santa Fe Ry. Co.* (2004) 121 Cal.App.4th 452, 462 (*SFPP*).) In applying the substantial evidence standard, we "view the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference and resolving all conflicts in its favor. . . . " (*Jessup Farms v. Baldwin* (1983) 33 Cal.3d 639, 660.) We independently review questions of law. (*SFPP*, *supra*, 121 Cal.App.4th at p. 461.) "[A] party does not waive objections to legal errors appearing on the face of a statement of decision by failing to respond to it." (*Fladeboe*, *supra*, 150 Cal.App.4th at p. 59.)

2. *Substantial Evidence Supports Statement of Decision's Express and Implied Findings*

We conclude substantial evidence supports the trier of fact's conclusion the lack of a left turn lane on SR-62 at Juniper Road was not the proximate cause of Davis's injury. The question whether a dangerous condition was a substantial factor in causing a

13

specific accident must be considered in light of the particular circumstances that constitute the dangerous condition. In this case, in its statement of decision, the trial court gave a factual explanation of the circumstances that made the SR-62/Juniper Road intersection dangerous specifically referring to the increased speed limit of 65 MPH, the increased volume of traffic of the highway, and the required "[d]ecision sight distance, or the amount of roadway needed to see an object and bring a vehicle safely to a stop, while traveling at 65 [MPH]" of 1,100 feet. The court impliedly found the intersection was dangerous because a driver needed an amount of stopping distance to respond to a stopped car that could be unavailable because fast speed and heavy traffic volume on the highway could impede visibility and the ability to safely stop. But the trial court concluded those circumstances were not present in this case. There were no visibility issues. Delote had unlimited distance in which she could or should have seen Davis stopped and signaling her turn. Nor was there any traffic that could have prevented Delote from timely seeing Davis's car, or from steering around her car. Thus, the circumstances that made the condition dangerous were not present to have caused this particular accident.

We recognize that in its tentative statement of decision, the trial court qualified its dangerous condition finding when it stated "*depending upon factors, including traffic conditions throughout the day,* the intersection created a substantial risk of injury when the road was used with due care . . . ." (Italics added.) Although none of Davis's objections to the tentative statement of decision implicated that limitation, the italicized language was omitted from the court's final statement of decision. But "dangerous condition" and causation can intertwine (*Constance B. v. State of California* (1986) 178 Cal.App.3d 200, 208), and we must read the statement of decision as a whole. The alteration does not suggest the trial court concluded traffic conditions were irrelevant. When the entire statement of decision is considered, that single modification connotes only that the trial court decided the particular road and traffic conditions that

14

could affect a specific driver's ability to see and safely stop for a left turning car should be factored into the causation analysis rather than the dangerous condition analysis. That modification is consistent with the rule that "due care" as referred to in section 830's definition of a dangerous condition (i.e., to find a dangerous condition there must be "substantial . . . risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used") refers to due care used by the public in general, not by the parties involved in the specific accident. (*Alexander, supra,* 159 Cal.App.3d at p. 899 [to constitute a dangerous condition, an injured plaintiff need not prove the public "'property was actually being used with due care at the time of the injury, either by himself or by a third party'"].) In other words, the court was merely recognizing that varying conditions of the road at any given time, and how they impacted a third party's driving, were relevant to causation. (See also *Swaner v. City of Santa Monica* (1984) 150 Cal.App.3d 789, 804 [third party's negligence affects proximate causation, not the dangerous condition].)

The trial court found that because high speed and high traffic volume on SR-62 impacted a driver's ability to stop (presumably because they increased the required stopping distance), the lack of a left turn lane created a foreseeable risk of injury to a driver stopped in the road to make a left turn. However, it found that in this particular case, the dangerous condition was not a substantial factor in causing Davis's injuries. Its conclusion is supported by substantial evidence. The court referred to evidence concerning the road conditions (it was daylight, clear, and dry), the absence of eastbound traffic, the geometrics of the road itself (straight and slightly declining thereby increasing visibility), that Davis's turn signal was on and her brake lights illuminated, and that the only two other eastbound vehicles that approached Davis easily maneuvered around her. The court referred to evidence about the decision sight distance while traveling at 65 MPH of 1,100 feet, and found Delote had "extensive and unobstructed available sight distance," which was consistent with the expert witnesses who testified Delote's vision

15

distance was anywhere from 1,500 feet, to over 2,000 feet, to "virtually unlimited." The court referred to the distance Delote needed to perceive Davis's presence and to safely stop her car—326 feet—that Delote did not have any perception until she was 193 feet away from Davis's vehicle, and the skid marks evidenced panic braking and inattention.

Davis contends there is no evidence in the record to support the trial court's factual finding Delote was negligent, inattentive, or the cause of the accident. Nonsense. The undisputed evidence was that Delote had completely unobstructed visibility of the SR-62/Juniper Road intersection for at least 1,500 feet, there was no traffic to impede her ability to steer clear of Davis's car, Davis's brake lights and turn signals were on, Delote did not commence to react to Davis's car until she was 193 feet away, and Delote did not commence hard braking until she was about 36 feet away from Davis's car. The only reasonable inference was that Delote was not paying attention to the road.

Davis's complaint is largely about the court's factual finding Delote was familiar with the road because she drove it several times a week. Delote did not testify at trial, and that information came from testimony from expert witnesses (including her own) who testified as to Delote's deposition testimony. Davis contends Delote's deposition testimony was inadmissible hearsay. "Although experts may properly rely on hearsay in forming their opinions, they may not relate the out-of-court statements of another as independent proof of the fact. [Citations.]" (*Korsak v. Atlas Hotels, Inc.* (1992) 2 Cal.App.4th 1516, 1524-1525.)

Davis has waived any complaints about the experts' testimony concerning Delote's deposition testimony because she failed to raise any objections during trial. (*Coit Drapery Cleaners, Inc. v. Sequoia Ins. Co.* (1993) 14 Cal.App.4th 1595, 1611 ["It is hornbook law that a timely and specific objection is required to prevent the consideration of certain evidence; the failure to object at all waives any claim of error"].) Davis claims her "continuing [hearsay] objection" to the testimony of CHP Officer Randy O'Brien about statements Delote made at the accident scene sufficed. We disagree. That

16

objection was clearly directed at the officer's testimony about Delote's admissions at the scene of the accident, as demonstrated by the fact that at the conclusion of trial, the court specifically referred to that objection and specifically ruled the officer's statements about Delote's statements made at the scene and during the accident investigation to be inadmissible. Davis's failure to raise any objections to the experts' testimony waives her complaint on appeal.

Moreover, even were we to disregard the statements concerning Delote's familiarity with the road, we would find no prejudice in view of the strength of the other evidence concerning her negligence all of which came from Davis herself (e.g., the light traffic, clear dry weather conditions, her turn signal was on, her brakes depressed, and all her lights were in good working order), or from the various expert witnesses based on their own observations about the geometrics of the road way (straight road, slight incline from Sunny Vista so driver looking down, color contrast between road, cars, buildings and vegetation, and lack of any visual obstructions), the requisite distance for bringing a vehicle to a stop, and what the skid marks showed about Delote's lack of braking and lack of steering. In sum, we conclude there is substantial evidence supporting the trial court's findings.

*3. No Errors of Law*

To avoid application of the substantial evidence test that governs appellate review of the trier of fact's express and implied findings, Davis has couched her argument in terms of complaints the trial court necessarily applied incorrect *legal* standards to reach its factual conclusions concerning causation. She raises several such errors of law. None of her contentions have merit.

First, Davis contends that as a matter of law the lack of a left turn lane was a proximate cause of her injury because the court found it to be a dangerous condition that increased the risk of the very type of accident that occurred. In making this argument, Davis relies on a series of cases concerning the effect of third party negligence

17

that are inapt either because they did not concern causation (but rather whether there was a dangerous condition), or are distinguishable because none arose in a context in which a reviewing court held there was causation as a matter of law.

For example, in *Ducey, supra,* 25 Cal.3d 707, a jury returned a verdict against the State in favor of plaintiffs who were injured when another driver crossed the freeway median strip, which lacked any sort of barrier, and collided head on with their car. The Supreme Court affirmed the jury's verdict rejecting the State's argument the issue of dangerous condition should never have been submitted to the jury. First, the State asserted it could be liable only if the physical aberration or defect actually caused the accident, and not for the mere absence of a protective barrier. (*Id.* at p. 715.) The Supreme Court rejected this argument concluding that "when, as in this case, the [S]tate has actual or constructive notice of a 'dangerous condition' on a public highway, the [S]tate bears an affirmative obligation to take reasonable steps to protect the public against the danger. If the [S]tate fails to take such reasonable protective measures *and its failure proximately causes plaintiff's injuries*, the [S]tate may be held liable for the resulting damages." (*Ibid.*, italics added.) The State also argued a cross-median accident usually occurs as the result of the victim or a third party's negligence and therefore the jury could not find the highway dangerous when being used with due care. The Supreme Court rejected this contention finding there was substantial evidence from which a jury could find "the lack of a median barrier created a substantial risk of injury even in the absence of negligent conduct[,]" such as when the accident resulted "from mechanical failure, sudden illness, or animals in the road." (*Id.* at p. 719.)

In *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, a wrongful death action was filed alleging a dangerous condition of public property after a woman was shot and killed by her ex-husband at a courthouse. The Supreme Court affirmed the judgment dismissing the complaint after the county's demurrer was sustained, finding as

18

a matter of law there was no dangerous condition and there was no causal connection between the alleged dangerous condition and the shooting.  (*Id.* at pp. 1140-1141.)

Neither *Ducey* nor *Zelig* compel finding causation as a matter of law.  The other cases upon which Davis relies are similarly unavailing.  In *Bauman v. San Francisco* (1940) 42 Cal.App.2d 144, 153, a jury verdict for plaintiff was affirmed because its factual findings of dangerous condition and proximate cause were supported by substantial evidence.  *Cerna v. City of Oakland* (2008) 161 Cal.App.4th 1340, 1352, affirmed the trial court's grant of summary judgment agreeing that as a matter of law the city crosswalk was not a dangerous condition.  In *Swaner*, *supra,* 150 Cal.App.3d at page 803, the judgment that followed an order sustaining the city's demurrer was reversed because plaintiffs adequately alleged a dangerous condition and whether the dangerous condition proximately caused their injuries was a question of fact.  In *Schonfeldt v. State of California* (1998) 61 Cal.App.4th 1462, 1486, a judgment of dismissal after granting motion for judgment on the pleadings was affirmed because as a matter of law there was no dangerous condition.  And in *Mathews v. State of California ex rel. Dept. of Transportation* (1978) 82 Cal.App.3d 116, 121, a judgment following an order sustaining the State's demurrer was reversed because the third party's negligence did not *negate* the dangerous condition as a matter of law.

None of these cases support Davis's contention that a finding of a dangerous condition compels a finding of proximate causation as a matter of law.[2]

---

[2]     We observe that *Baldwin v. State of California* (1972) 6 Cal.3d 424, 427-428 (*Baldwin*), involved the same basic fact pattern presented in this case.  Plaintiff was rear-ended while he was stopped on a state highway to make a left hand turn.  He contended the lack of a left turn lane was a dangerous condition in view of the heavy traffic and high speeds on the highway.  The trial court granted summary judgment applying the design immunity of section 830.6.  The Supreme Court reversed holding there were triable issues of fact as to whether the design immunity applied.  (*Baldwin, supra,* 6 Cal.3d at p. 439.)  In a footnote, the Court observed the State could not avoid liability just because the immediate cause of the accident was the other driver's negligence, if the alleged dangerous condition of the highway (the lack of left turn lane)

And notably *Bonanno, supra,* 30 Cal.4th 139, underscores that a finding of dangerous condition *does not* compel a finding of causation. In *Bonanno*, plaintiff was in a marked crosswalk on a busy road at an uncontrolled intersection walking to the bus stop. A driver had stopped for plaintiff, but an inattentive second driver rear-ended the stopped car pushing it into the crosswalk and hitting plaintiff. (*Id.* at p. 145.) Plaintiff sued the transit agency for a dangerous condition of public property. (*Id.* at p. 146.) The Supreme Court affirmed a jury verdict for plaintiff addressing only the issue of whether the bus stop could be found to be a dangerous condition because users had to cross at a dangerous crosswalk. (*Id.* at p. 147.) The Supreme Court concluded a jury could find bus stop dangerous because a condition on the adjacent property (i.e., the crosswalk at an uncontrolled intersection) exposed users of the bus stop to a substantial risk of injury. That the injury occurred on adjacent county property and that a third party was the immediate cause of the injury did not preclude a finding of dangerous condition. (*Id.* at pp. 152-153.) In so holding, the Supreme Court emphasized it was only addressing the dangerous condition element of liability, and a plaintiff who established a dangerous condition still had to prove the other elements for liability under section 835, including that the dangerous condition proximately caused the injury. (*Id.* at pp. 154-155.)

Davis next contends the trial court made a legal error by failing to properly apply the law concerning intervening or superseding causes. This claimed legal error was not the subject of any objection to the statement of decision and is not an error appearing

was also a cause of the injury: "'If an injury is produced by the concurrent effect of two separate wrongful acts, each is a proximate cause of the injury, and neither can operate as an efficient intervening cause with regard to the other. [Citations.] The fact that neither party could reasonably anticipate the occurrence of the other concurrent cause will not shield him from liability so long as his own negligence was one of the causes of the injury. [Citations.]' [Citation.] This principle has been applied even when one of the negligent parties is a governmental entity. [Citations.]" (*Id.* at p. 428, fn. 3.) But that observation presupposes a finding the dangerous condition was a cause of the injury, and nothing in *Baldwin,* purports to compel finding causation as a matter of law follows from the finding of a dangerous condition.

20

on the fact of the statement of decision.  Davis relies upon the rule that under traditional causation principles a defendant whose conduct is a substantial factor in bringing about a plaintiff's injury cannot escape liability based on the conduct of a third party unless the third party's conduct operates as a superseding cause that breaks the chain of legal causation between the defendant's conduct and the plaintiff's injury.  (*Landeros v. Flood* (1976) 17 Cal.3d 399, 411.)  To constitute a superseding cause, the third party's conduct must be an independent event that intervenes in the chain of causation to produce harm of a kind and degree so far beyond the risk the defendant should have foreseen the law deems it unfair to hold the defendant responsible for the harm.  (*In re Ethan C.* (2012) 54 Cal.4th 610, 641; *Lugtu v. California Highway Patrol* (2001) 26 Cal.4th 703, 725.)  Davis argues that because rear-end collisions are a foreseeable risk of the lack of a left turn lane, Delote's negligent driving was not the kind of independent event that breaks the chain of causation between the dangerous condition and the injury.  But here the trial court found the dangerous condition was not a substantial factor in causing this accident.  There is no causal chain to break, and thus there was no reason for the trial court to apply rules concerning superseding or intervening causation.

Davis also contends the trial court impermissibly shifted the burden of proof as to Delote's negligence.  She argues the State bore the burden of proving Delote was negligent.  (Evid. Code, § 521 ["[t]he party claiming that a person did not exercise a requisite degree of care has the burden of proof on that issue"]; *Alexander, supra,* 159 Cal.App.3d at p. 900 [speeding "'is not negligence as a matter of law, and the burden is on the party asserting negligence'"].]  By concluding Delote's negligence was the sole cause of the accident, and finding Davis had failed to prove causation, Davis argues the trial court improperly allocated the burden of proof regarding Delote's negligence to her.  We find nothing in the statement of decision suggesting the trial court misallocated the burden of proof.

21

Moreover, even if the court did misallocate the burden of proof of Delote's negligence, this was a bench trial and "'misallocation of the burden of proof is not "reversible error *per se*," [and] does not vitiate the substantial evidence rule . . . .' [Citation.]" (*Perez v. VAS S.p.A.* (2010) 188 Cal.App.4th 658, 679.) As we have already explained, substantial evidence supports the trial court's findings Delote's negligence was the sole cause of the accident.

Finally, Davis suggests the trial court committed legal error by requiring she prove a causal link between the dangerous condition and Delote's negligence. The argument is a red herring. There is language in some cases to the effect that "the defect in the physical condition of the property must have some *causal relationship* to the third party conduct that actually injures the plaintiff. [Citation.]" (*Zelig*, *supra,* 27 Cal.4th at p. 1136, citing *Constance B.*, *supra,* 178 Cal.App.3d at pp. 210-212.) And other cases have clarified the issue is not that the dangerous condition caused the third party to be negligent, but whether the dangerous condition was a substantial factor is causing the plaintiff's injury. For example, *Lane v. City of Sacramento* (2010) 183 Cal.App.4th 1337, 1348, rejected "[T]he city['s] assert[ion] plaintiffs could not establish the requisite causal connection because '[t]he center divider did not cause [the third party] to swerve or move to the left.' [The] argument . . . misapprehends the nature of the required causal connection. Under the governing statute, the pertinent question is not whether the divider caused [the third party] to swerve or move to the left; rather, the pertinent question is whether plaintiffs' 'injury was proximately caused by the dangerous condition.' (§ 835.)" We note the issue is pending review in *Cardova (Antonio) v. City of Los Angeles* (March 20, 2013, S208130) ["The issue to be briefed and argued is limited to the following: May a government entity be liable where it is alleged that a dangerous condition of public property existed and caused the injury plaintiffs suffered in an accident, but did not cause the third party conduct that led to the accident?"].

22

Here, there is nothing in the trial court's statement of decision suggesting it believed causation could be proven only if Davis demonstrated the lack of a left turn lane caused Delote to drive inattentively. Although Davis's objections to the tentative statement of decision raised this argument by objecting that the State's "argument that the dangerous condition must facilitate or cause the third party negligence is simply not the law[,]" there was nothing in the tentative decision suggesting the court was applying such a rule, and nothing in the record suggesting the State ever made such an argument.

*4. Interim Measures*

Finally, Davis argues that even the immunities asserted by the State (design immunity/reasonable act or omission immunity) applied, the State was nonetheless liable for failing to take reasonable interim measures to protect against the dangerous condition (e.g. restriping as a double double yellow line to prohibit left turns, posting warning signs, or reducing the speed limit before the intersection). Because we have concluded substantial evidence supports the trial court's factual finding the dangerous condition was not the proximate cause of the accident, we need not address this contention further.

DISPOSITION

The judgment is affirmed. Respondent is awarded its costs on appeal.


O'LEARY, P. J.

WE CONCUR:


MOORE, J.


FYBEL, J.


23